580 So.2d 1022 (1991)
Michael SHELVIN, Plaintiff-Appellee,
v.
WASTE MANAGEMENT, INC., d/b/a Waste Management of Acadiana and American Motorists Insurance Company, Defendants-Appellants,
Minute-Man Temporary Services, Inc. and Liberty Mutual Insurance Company, Third Party Defendants-Appellees.
No. 89-1254.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
*1024 Marshall J. Stockstill, Lafayette, for plaintiff-appellee.
Jeansonne & Briney, William F. Page, Jr., Lafayette, for defendants-appellants.
Leah M. Hipple, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, C.J., and GUIDRY and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
In this worker's compensation suit, defendants, Waste Management of Acadiana and American Motorists Insurance Company, appeal a trial court judgment in favor of plaintiff, Michael Shelvin. Defendants also appeal the trial court's rejection of their third party demand for indemnification against Minute-Man Temporary Services, Inc. and Liberty Mutual Insurance Company. We affirm, as amended.

FACTS
On August 3, 1987, Michael Shelvin suffered a heat stroke while working as a helper on a Waste Management garbage collection truck. The heat stroke aggravated an unknown and asymptomatic pre-existing kidney condition, producing acute renal failure. At the time of trial in December of 1988, Shelvin was undergoing dialysis and was on a waiting list for a kidney transplant.
Waste Management's compensation insurer, American Motorists Insurance Company, paid Shelvin weekly benefits and medical expenses through October 5, 1987. At that time, American Motorists discontinued the plaintiff's benefits, contending that Shelvin's kidney failure was not the result of his heat stroke and that Shelvin was in fact an employee of Minute-Man Temporary Services, Inc., pursuant to a contractual arrangement between Minute-Man and Waste Management.
At trial, Waste Management introduced a copy of a "Defense, Indemnification, and Hold Harmless" agreement executed by Minute-Man in favor of Waste Management which was in effect on the date of Shelvin's accident. Under the agreement, Minute-Man maintained casual laborers on its payroll and provided these men to Waste Management for use as helpers on garbage trucks. Minute-Man, and not Waste Management, secured compensation insurance covering these workers.
At the time of Shelvin's accident, Waste Management did not directly employ any casual laborers; these positions were all filled by Minute-Man employees. However, Minute-Man contends that Shelvin *1025 never went through its application process and was never on its payroll. Minute-Man therefore refused to pay Shelvin worker's compensation benefits because the indemnification agreement with Waste Management applies only "with respect to temporary services furnished to Customer [Waste Management] by Minute-Man Temporary Services."
Over the years, Waste Management and Minute-Man developed a procedure for handling the temporary employees. A prospective employee would complete a Minute-Man application and would then be told by Minute-Man personnel to report to the Waste Management facility between 2:30 and 3:30 a.m. on Monday mornings. A Waste Management supervisor would select a certain number of these workers to ride on the garbage trucks as helpers. The supervisor would record the names of those chosen as helpers on a "Daily Residential Report." Later in the morning, after the temporary workers had already left the Waste Management facility on the garbage trucks, a Minute-Man employee would call Waste Management to verify that those employees chosen had actually filled out Minute-Man applications. If an employee selected to ride on the trucks had not filled out an application, that person's name was circled on the Daily Residential Report and he was immediately removed from the trucks.
On August 3, 1987, the date of plaintiff's accident, Joe Duhon, a Waste Management supervisor, selected Shelvin as one of the temporary workers for that week. Shelvin's name was recorded on the Daily Residential Report, but it was not circled, nor was he pulled off the truck before his heat stroke which occurred shortly before noon. Steve Haydel, Waste Management dispatcher, testified these two facts indicated that Minute-Man had confirmed Shelvin's employment that morning. However, Mr. Haydel, the employee who would normally receive Minute-Man's confirmation call, did not directly testify that he received the call that morning. According to Minute-Man employees, the call was not made until after Shelvin suffered his heat stroke.
When Minute-Man denied Shelvin's employment, Waste Management notified its compensation carrier of the accident, authorized payment of Shelvin's medical expenses and issued a check to Shelvin for $28.00 representing wages for the few hours he had worked that morning.
After trial on the merits, the trial court found that Minute-Man did not have an application for Shelvin on file. Because Shelvin was selected by Waste Management as a helper, had performed services in Waste Management's trade, business or occupation, and was paid by Waste Management, the trial court concluded Shelvin was Waste Management's employee. The court found Shelvin to be totally and permanently disabled, ordered Waste Management and its insurer to pay Shelvin weekly benefits, past medical expenses of approximately $96,000.00, all future medical expenses, and further assessed defendants with penalties and attorney's fees. The trial court dismissed Waste Management's claim for indemnification against Minute-Man.
On appeal, Waste Management and American Motorists assign the following errors:
1) The trial court erred in finding that Michael Shelvin was in the course and scope of his employment with Waste Management (as opposed to Minute-Man) at time of his heat stroke.
2) The trial court erred in finding that the plaintiff was entitled to recover worker's compensation benefits at all, as he deliberately failed to use an adequate guard or protection against accident/injury provided to him by Minute-Man Temporary Services and/or Waste Management of Acadiana.
3) The trial court erred in awarding to the plaintiff attorney's fees by finding that Waste Management and American Motorists Insurance Company handled this matter in an arbitrary and capricious manner.
4) The trial court erred in finding that the employer/worker's compensation carrier was not entitled to take an offset in this matter for medical expenses paid by Medicare.

*1026 EMPLOYER/EMPLOYEE RELATIONSHIP
La.R.S. 23:1044 provides in part:
A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.
The essence of the employer/employee relationship is the right to control. Four primary evidentiary factors considered in deciding this issue are (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. Gaspard v. Travelers Insurance Co., 284 So.2d 104 (La.App. 3d Cir. 1973).
The presumption of La.R.S. 23:1044 may be rebutted upon proof that there was no contract of employment, express or implied, between the alleged employee and the alleged employer. Gaspard; Young v. Royal Jones & Associates, 521 So.2d 798 (La.App. 2d Cir.1988).
Joe Duhon, sanitation supervisor at Waste Management, testified he picked Shelvin as a helper from the men who came to the Waste Management facility on the date of the accident. Arlin Bernard, the driver of the truck that Shelvin was assigned to, testified that Shelvin performed the duties of a helper until he collapsed from heat stroke that day. Joe Duhon testified that he had the power to hire and fire the temporary workers sent over from Minute-Man, although the workers were under the direct supervision of their truck drivers when the trucks were on the road. Ben Bourgeois, operations manager at Waste Management, stated that Shelvin was put on Waste Management's payroll and was paid $28.00 for that day's work after Minute-Man denied Shelvin was its employee. The trial court found, and we agree, that Shelvin proved all four evidentiary factors considered in determining an employer/employee relationship.[1]
To rebut the presumption of employment in La.R.S. 23:1044, Waste Management introduced the indemnification agreement which it claims makes Shelvin a Minute-Man employee. Waste Management also emphasizes that Minute-Man did not deny Shelvin was its employee until after his heat stroke, that Shelvin testified he did fill out a Minute-Man employment application, and that Minute-Man failed to call its former employee, N.J. Hebert, who would have accepted Shelvin's application had it been completed.
The trial court found that Minute-Man did not have an application for Shelvin on file. After reviewing the conflicting testimony on this point, we cannot say the trial judge erred. Steve Haydel, the Waste Management employee most likely to have accepted Minute-Man's call to confirm the workers that morning, could not verify that the call was made. Joe Duhon admitted that Michael Shelvin closely resembled his cousin Anthony Shelvin, who had worked as a Waste Management helper, through Minute-Man, in the past. Duhon further testified he could not verify that the helpers he selected on Monday mornings had gone through Minute-Man's application process until several hours after they had begun working on Waste Management's garbage trucks.
The evidence preponderates that Duhon, believing Michael Shelvin to be his cousin Anthony, assigned him to a truck. Waste Management failed to confirm its list of workers with Minute-Man that morning; thus, the error with Shelvin's application was not discovered until after Shelvin suffered his heat stroke. Unfortunately, this case falls precisely within the problem created by the verification system in place on the day of the accident. Waste Management could not confirm that its helpers were registered with Minute-Man until after these employees had performed several hours of work in Waste Management's trade, business or occupation.
*1027 We disagree with Waste Management's contention that Minute-Man's failure to call N.J. Hebert creates a presumption that Hebert's testimony would have been unfavorable to Minute-Man. At the time of trial, Hebert was no longer a Minute-Man employee; he was fired for poor bookkeeping and attitude problems. Waste Management learned of Hebert's existence, although not of his whereabouts, four months prior to trial. At trial, it was learned that Hebert was still employed in Lafayette Parish.
Failure of a party to call a witness creates a presumption that the witness's testimony would have been unfavorable, where that party has the burden of proof, or where that party has some control over, or a close relationship with the witness. The presumption does not apply where the witness was equally available to either party. Fortenberry v. Fortenberry, 432 So.2d 1125 (La.App. 3d Cir.1983). Considering that Hebert was no longer a Minute-Man employee and that Waste Management learned of his existence well before trial, we find Hebert was equally available to both parties.
Considering the above, we find the trial judge did not err in concluding Waste Management failed to meet its burden of proving that Shelvin was a Minute-Man employee. Waste Management's third party demand for indemnification was, therefore, properly dismissed.

FAILURE TO USE GUARD OR PROTECTION AGAINST INJURY
The record establishes that on the day of his accident, Shelvin did not drink any of the ice water Waste Management provided for its garbage collection workers, even though he was offered a drink several times by truck driver, Arlin Bernard. Waste Management argues Shelvin's refusal to drink the ice water amounts to a deliberate failure to use an adequate guard or protection against injury, which should disqualify him from any compensation under La.R.S. 23:1081(1)(c). We disagree.
The employer bears the burden of proof in determining whether or not it shall be exempt from paying compensation under any of the defenses listed in La.R.S. 23:1081(1). La.R.S. 23:1081(2). The employer must prove that the employee had a willful and wanton intention to injure himself. Gooch v. Standridge Brothers, 478 So.2d 980 (La.App. 5th Cir.1985), writ denied, 481 So.2d 1351 (La.1986). The employer must also show that the safety device was provided solely as a guard or protection and that the employee had knowledge of its function and adequacy and deliberately failed to use it. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965).
Shelvin testified he did not drink any of the water on the day in question because he was not thirsty. We fail to see how this conduct exhibits a willful intention on the part of Shelvin to injure himself. There has also been no showing that the ice water was provided primarily for the purpose of safety, as opposed to convenience, or that any instructions were provided for its use. We find no merit to this assignment of error.

PENALTIES AND ATTORNEY'S FEES
Waste Management and American Motorists contend the trial court erred in assessing them with penalties and attorney's fees under La.R.S. 23:1201 E and La.R.S. 23:1201.2. Defendants contend that on the date benefits were discontinued, October 5, 1987, they possessed sufficient information to reasonably controvert Shelvin's entitlement to benefits and they did not act in an arbitrary and capricious manner.
Shelvin was hospitalized twice in August of 1987, incurring medical expenses of $2,933.60 during the first admission and $10,444.60 during the second admission. Ms. Antoinette Henderson, the adjuster handling Shelvin's claim, testified she wrote to the plaintiff's treating physician, Dr. Scott Thompson, to inquire whether the plaintiff's second hospital visit was related to his heat stroke. On September 30, 1987, Dr. Thompson replied that the second admission was triggered by "new complaints *1028 of hematemesis and azotema." He further stated, "I would have to say at that point he was admitted for complaints related directly to his heat stroke."
In spite of this unequivocal medical report, Ms. Henderson did not authorize payment of the expenses Shelvin incurred during his second hospital admission. She also discontinued Shelvin's weekly benefits as of October 5, 1987. At that time, the only other information on file was an "auditor's report," prepared by a registered nurse who did not treat or examine the plaintiff, which stated that Shelvin's continuing renal failure was not related to his heat stroke. We find this "auditor's report" was not sufficient to reasonably controvert Shelvin's claim. Furthermore, we consider American Motorists' reliance upon the "auditor's report," when confronted with what the trial court termed "clear and convincing medical evidence" in Shelvin's favor, constitutes arbitrary and capricious conduct. If American Motorists disagreed with Dr. Thompson's medical opinion, it should have conducted its own investigation into Shelvin's condition. The auditor's report contains no new information; it merely expresses dubious medical and legal conclusions.
Ms. Henderson also testified that she considered other factors in her decision to refuse Shelvin's claim, including (1) the deposition of Dr. Thompson, (2) a recommendation from the Office of Worker's Compensation, and (3) her belief that Shelvin was an employee of Minute-Man rather than Waste Management.
We first note that both Dr. Thompson's deposition and the OWC recommendation were not available to American Motorists when it decided to discontinue Shelvin's benefits. Secondly, the plaintiff's treating kidney specialist, Dr. Juan Zeik, testified that Shelvin's heat stroke directly contributed to his renal failure. In his deposition, Dr. Thompson stated that he would defer to Dr. Zeik's opinion on this matter.
Finally, we find no merit to American Motorists' contention that it should not be assessed penalties or attorney's fees because it reasonably believed that Shelvin was a Minute-Man employee. In Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3d Cir.1979), writ denied, 379 So.2d 1102 (La.1980), we recognized that a dispute between two insurers as to which one owes compensation benefits is not a justifiable basis for withholding these benefits from the injured employee. The rationale of Fontenot, that the injured employee should not bear the costs of a battle between two insurers, applies equally to a contest between employers. We also note that even if Shelvin had been properly registered with Minute-Man, then Waste Management, American Motorists' insured, was nonetheless solidarily liable with Minute-Man for Shelvin's benefits and expenses, as Shelvin's special employer. See Smith v. Kelly Labor Service, 239 So.2d 685 (La.App. 4th Cir.1970), writ denied, 257 La. 173, 241 So.2d 531 (1970).
Shelvin filed an answer in this court seeking an increase in attorney's fees for prosecution of this appeal. We will increase the $7,200.00 attorney's fee award in the trial court by $1,000.00.

MEDICARE OFFSET
Shelvin testified that his kidney related expenses, which totalled $63,515.24 at the time of trial and which were expected to continue at approximately $4,000.00 a month for the duration of his dialysis treatments, are covered by Medicare. Waste Management and American Motorists argue they are entitled to an offset for those expenses covered by Medicare.
The employer's duty to furnish a compensation claimant medical expenses is found in La.R.S. 23:1203 A. That statute states that the employer shall provide "all necessary medical, surgical, and hospital services, and medicines, or any non-medical treatment recognized by the laws of the state as legal ..." We are aware of no statutory authority providing for an offset for any medical expenses that the employer is required to furnish to a successful claimant. La.R.S. 23:1225 permits the employer a limited reduction in compensation benefits only when the employee is also receiving certain other specifically enumerated *1029 benefits. Medicare payments are not listed therein.
Nor are we persuaded that the failure to allow an offset will result in double recovery by the plaintiff for these expenses. La.R.S. 46:446 provides, in part, as follows:
A. When an injury has been sustained or an illness or death incurred by any person under circumstances creating in some third person or legal entity a legal liability or obligation to pay damages or compensation to that person or to his spouse or dependent, the Department of Health and Human Resources shall have a cause of action against such third party and/or may intervene in a suit filed by or on behalf of the injured, ill, or deceased person or his spouse or dependent against such third party to recover the assistance payments and medical expenses the Department of Health and Human Resources has paid or is obligated to pay on behalf of the injured, ill, or deceased person in connection with the said injury, illness, or death. (Emphasis added.)
B. Any person or his spouse or dependent who files suit for the recovery of damages or compensation as a result of an injury, illness, or death for which assistance payments or medical expenses in whole or in part have been paid by the Department of Health and Human Resources, for which the Department has an obligation to pay therefor, shall at the time suit is filed cause a copy of the petition to be served on the Department, in the manner prescribed by Article 1313 of the Louisiana Code of Civil Procedure. Such person filing suit shall be responsible to the Department to the extent of the medical payments or assistance received if he fails to have service made upon the Department. Such person shall also be responsible to the Department if he compromises his claim without giving the Department written notice at least thirty days before the compromise is effected. (Emphasis added.)
Shelvin admitted he did not serve the Department of Health and Human Resources with a copy of the petition in the instant suit. Nor has the Department intervened in this proceeding. The quoted statutory scheme contemplates that Shelvin is personally responsible for these expenses.
For the above and foregoing reasons, the judgment of the trial court is affirmed, and is amended to increase the attorney's fee award by $1,000.00. Costs of this appeal are assessed to appellants, Waste Management of Acadiana and American Motorists Insurance Company.
AFFIRMED AS AMENDED.
NOTES
[1] Waste Management argues the trial court improperly relied upon American Motorists' payment of benefits and medical expenses to Shelvin as a basis for its finding of liability on the part of defendants. We disagree. The trial court's conclusion that Shelvin was a Waste Management employee is amply supported by other facts proved in the record.