789 So.2d 649 (2001)
Bennett HARRINGTON
v.
Bennett HEBERT.
No. 00-1548.
Court of Appeal of Louisiana, Third Circuit.
May 23, 2001.
*650 R. Chadwick Edwards, Jr., Edwards & Edwards, Abbeville, LA, Attorney for Plaintiff-Appellant.
Carl W. Robicheaux, Cooper, Woodruff & Robicheaux, Abbeville, LA, Attorney for Defendant-Appellee.
Court composed of SYLVIA R. COOKS, JOHN D. SAUNDERS, OSWALD A. DECUIR, MICHAEL G. SULLIVAN, and ELIZABETH A. PICKETT, Judges.
SAUNDERS, Judge.
Mr. Bennett Harrington brought suit against Mr. Bennett Hebert for the recovery of medical benefits under workers' compensation. At trial, the workers' compensation judge found that Mr. Harrington was not entitled to such benefits because he found Mr. Harrington to be an independent contractor. On appeal, we reverse.

FACTS
Mr. Bennett Hebert has operated the Gueydan Duck Club as a sole proprietorship for approximately 16 years. Mr. Hebert advertises his hunting club in the Louisiana Sportsman, the Times Picayune, and The Advertiser. In these advertisements for the club, Mr. Hebert offers guided and unguided hunts. Each year, Mr. Hebert opens the club for hunting during duck and goose seasons. These seasons overlap and run for approximately one hundred days.
*651 During the 1998-1999 hunting season, Mr. Hebert charged $225.00 per sport.[1] For that amount he offered the sports, "[s]leeping quarters, meals, hunt and guide." If the sport did not want a guide, Mr. Hebert charged him $200.00. Mr. Hebert testified that he employs "a cook, a dishwasher and a housekeeper" to service his hunting lodge. He admits that he considers these staff members to be employees even though he does not pay any employment taxes or social security on their wages. These staff members are also considered employees despite the fact that they are paid weekly and not paid based upon the number of hours worked.
In addition, Mr. Hebert employs cleaners and guides at the Gueydan Duck Club. Although he testified that he did not consider these workers to be employees, Mr. Hebert agreed that guides were an integral part of his business. Mr. Hebert testified that he employs a number of guides during the duck and goose seasons. He testified that of the guides employed, a number of them work on a consistent basis, i.e., at least 75% of the time. One of these guides was Mr. Bennett Harrington.
Mr. Hebert testified that he sells eight to ten guided hunts per weekday and that he sells fifteen to twenty guided hunts per weekend day. He testified that he paid each guide fifty dollars a day and that he had set this rate. Normally, the sports would pay him the entire fee, and he, in turn, would pay the guides. If a sport tipped, he could include it in his payment to Mr. Hebert or give it directly to his guide. Mr. Hebert stated that he determined which guides could work at his hunting club, and he could choose to prohibit them from guiding there. Mr. Hebert testified that he assigned guides to each group of sports. He also testified that he provided the blinds, decoys, water, and fields in which the hunts took place. Mr. Hebert testified that he provided transportation from the club to the blinds for some sports. This transportation consisted of several trucks provided by the club and driven by the guides. Mr. Hebert also testified that he provided cellular phones to the guides so that they could contact him for any needs they might have during the hunts.
Finally, Mr. Hebert said that he selected guides to work for the Gueydan Duck Club. Mr. Hebert testified that his guides had to be able to call ducks or geese. Mr. Hebert also testified that he selected his guides based on their personalities, and their ability to entertain.
Mr. Bennett Harrington also testified at trial. Mr. Harrington testified that he became employed with the Gueydan Duck Club when he was eighteen. Mr. Harrington stated that Mr. Hebert approached him at one of the hunting club's parties and asked if he would like to be a guide. Thereafter, Mr. Harrington was a guide at the club for three years.
With regards to his work as a guide, Mr. Harrington testified that he had never directly approached a sport for employment. Rather, Mr. Hebert would assign Mr. Harrington to a group of sports at the beginning of each hunt. Each group would leave approximately forty-five minutes before sunrise and would return by 9:30 a.m. While there was not a formal system of assigning blinds, Mr. Harrington testified that Mr. Hebert assigned regular guides to certain blinds. After their return from each hunt, the guides were responsible for debriefing Mr. Hebert as to the result of *652 the hunt. Mr. Harrington testified that he considered Mr. Hebert to be his supervisor; although, he stated that he did not need direct supervision while in the field because of his level of experience.
Mr. Harrington described his job as to "make the hunters happy ... make the hunters have a good time." Mr. Harrington accomplished this by entertaining the hunters, calling the birds, retrieving the birds, and insuring each sport's safety. On occasion, Mr. Harrington would use his dog to retrieve ducks. In addition, depending on the sport's wishes, Mr. Harrington would carry the sport's gear to the field.
On the morning of January 13, 1999, Mr. Hebert assigned Mr. Harrington to guide a rag hunt, which he had donated to Ducks Unlimited.[2] Mr. Harrington testified that when he and the sports arrived at the assigned blind, they stood around talking because the geese were not yet flying. Someone had left a loaded gun on the levee next to the area they were to hunt. Mr. Harrington testified that his dog stepped on the gun, and it fired. Mr. Harrington was standing in front of the gun. The gun shot struck his left leg, severing his sciatic nerve and tearing his muscles. The "wad of the shell" entered and stayed lodged in his right leg. As a result, Mr. Harrington has had two surgeries on his left leg, and he has participated in physical therapy. Mr. Harrington testified, that as of trial, his left foot has "no movement at all." Mr. Harrington must wear a brace, which keeps his foot in place so "it don't drop [and] I don't trip when I walk." Mr. Harrington testified that he must wear this brace for at least five years and that his left leg would probably never completely return to its preaccident state.

PROCEDURAL FACTS
Mr. Harrington filed suit against Mr. Hebert on February 23, 1999. Specifically, Mr. Harrington sought to recover from Mr. Hebert the cost of his medical treatment necessitated by his January 13, 1999, accident. After trial on the merits, the workers' compensation judge ruled in favor of Mr. Hebert and against Mr. Harrington. In doing so, the trial judge determined that Mr. Harrington was an independent contractor; therefore, he was not entitled to recovery under workers' compensation. From that judgment, Mr. Harrington appeals.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, Mr. Harrington urges the following assignments of error:
1. The trial court erred in failing to apply the presumption contained in La. R.S. 23:1044.
2. The trial court erred in failing to assign the burden of proof to Mr. Hebert.
3. The trial court erred in its application of the law relating to independent contractor status, and it erred in finding that Mr. Harrington was an independent contractor.
4. The trial court erred in failing to find that Mr. Harrington was entitled to penalties and attorney fees.

STANDARD OF REVIEW
In a workers' compensation case, as in other cases, our review is governed by the manifest error or clearly wrong *653 standard. Freeman v. Poulan Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733; Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). We may not set aside the trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). In reviewing such findings of fact, we must determine not whether the trier of fact was right or wrong, but whether its conclusions were reasonable. Mart v. Hill, 505 So.2d 1120 (La.1987).

EMPLOYEE VERSUS INDEPENDENT CONTRACTOR
As Mr. Harrington's first three assignments of error are related, we will address them together. In these assignments of error, Mr. Harrington asks us to determine whether the trial court erred in holding that he was an independent contractor rather than an employee of Mr. Hebert.
Each workers' compensation case must be decided on its own particular facts as to whether an employment relationship exists. City of Shreveport v. Kingwood Forest Apts., 32-370 (La.App. 2 Cir. 10/29/99); 746 So.2d 234. In doing so, the court must take into consideration the total economic relationship between the parties and the various facts weighing for or against a finding of an employment relationship. Id. The court must inquire into the true nature and character of the relationship between the parties based on actual facts, rather than how the parties have characterized themselves. See Sones v. Mutual of Omaha Ins. Co., 272 So.2d 739 (La.App. 2 Cir.1972), writ denied, 273 So.2d 292 (La.1973).
In addition, the court must take into consideration the presumption established by La.R.S. 23:1044. La.R.S. 23:1044 provides:
A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.
(Emphasis added.) This presumption is rebuttable. See Shelvin v. Waste Mgmt., Inc., 580 So.2d 1022 (La.App. 3 Cir.1991). The employer bears the burden of proof in overcoming this presumption and showing that a worker was not his employee for workers' compensation purposes. See Estate of Harris v. Ledet, 95-485 (La.App. 3 Cir. 11/2/95); 664 So.2d 561, writ denied, 95-2894 (La.2/2/96); 666 So.2d 1102.
For the purposes of workers' compensation, the right to control is the essence of the employer/employee relationship. See Jordan v. Central Mgmt. Co., 99-748 (La.App. 3 Cir. 10/13/99); 745 So.2d 116; Boswell v. Kurthwood Manor Nursing Home, 94-703 (La.App. 3 Cir. 12/7/94); 647 So.2d 630, writ denied, 95-0050 (La.3/17/95); 651 So.2d 267. The right to control is evidenced by four primary factors: selection and engagement, payment of wages, power of dismissal, and power of control. Boswell, 647 So.2d 630. None of these factors alone is determinative of an employer/employee relationship. Id. Rather, the totality of circumstances must be considered. Id.
In making her decision, the workers' compensation judge considered eight factors from Fuller v. United States Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2 Cir.), writ denied, 534 So.2d 444 (La.1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989). While these factors are instructive, they have not previously been used in the analysis of this circuit. Accordingly, we choose to follow the analysis used in the Fuller and Boswell cases in reviewing the workers' compensation judge's finding that Mr. Harrington was an independent contractor.
*654 In her reasons for judgment, the workers' compensation judge appears to take no notice of the presumption contained in La.R.S. 23:1044. However, in reviewing her decision, we begin our analysis with the presumption that Mr. Harrington was an employee of Mr. Hebert and, as such, is entitled to benefits under workers' compensation law.

Selection and Engagement
The first factor in determining whether a worker is an employee is selection and engagement. The workers' compensation judge did not consider the selection and engagement of the guides in determining that Mr. Harrington was an independent contractor. Our review of the record shows that Mr. Hebert had complete control over the selection and engagement of the guides who worked for the Gueydan Duck Club. Mr. Hebert selected and recruited the individuals who worked as guides. Mr. Harrington's testimony reflects that Mr. Hebert approached him and offered him employment as a guide at his hunting club. Therefore, the evidence regarding selection and engagement of guides weighs in favor of finding that Mr. Harrington was an employee of Mr. Hebert rather than an independent contractor.

Payment of Wages
The second factor in determining whether a worker is an employee is the method by which his wages are paid. The workers' compensation judge found that the fact that Mr. Hebert paid the guides by check, but did not make any tax withholdings, did not pay FICA, and did not pay unemployment taxes weighed in favor of finding Mr. Harrington to be an independent contractor. The fact than an employer does not withhold income tax from a worker's paycheck does not, standing alone, defeat employment status. Lewis v. Teacher's Pet, Inc., 621 So.2d 867 (La.App. 3 Cir.); writ denied, 629 So.2d 1140 (La. 1993); See Stutes v. Rossclaire Constr., Inc., 575 So.2d 466 (La.App. 3 Cir.1991). Our review of the record indicates that Mr. Hebert did not withhold tax on any of his workers, even those he considered to be his employees. In addition, Mr. Hebert, not the guides, set the price at which the guides would be paid per hunt. Looking at all of the evidence, we find that this factor weighs in favor of finding that Mr. Harrington is an employee.

Power of Dismissal
The power of dismissal is the third factor in the test for determining whether a worker is an employee. In his reasons for judgment, the workers' compensation judge noted:
The work was undertaken on a "piecemeal" or job by job basis. There was never any guarantee or obligation on the part of either party. Once a guide was assigned to a hunt and undertook the work; however, there was unmistakably a commitment between the guide and Hebert. The guide undertook to complete the hunt and Hebert was obligated to pay a certain price. Therefore, while there was no continuing obligation between the parities, once a job was undertaken, there was an obligation of performance between the parties. This factor weighs in favor of independent contractor status.
(Emphasis added.) A significant factor in determining whether a worker is an independent contractor is whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without corresponding liability for its breach. See Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955); Lewis, 621 So.2d 867 (La.App. 3 Cir.1993). In the instant case, the record reflects that the agreement between Mr. *655 Harrington and Mr. Hebert created an atwill relationship. Mr. Harrington could choose to go to the Gueydan Duck Club in the morning to provide guide services. Mr. Hebert could choose to assign Mr. Hebert to guide a group of sports. Both parties testified that there was no formalized agreement as to the term for which Mr. Harrington would work for the hunting club. As the trial court correctly noted, "[t]here was never any guarantee or obligation on the part of either party." Unlike the trial court, we find that this fact weighs in favor of employee status rather than independent contractor status.

Power of Control
The final factor of our analysis examines whether Mr. Harrington had the power of control. In evaluating this factor, the trial court erroneously examined only the actual control exerted by Mr. Hebert. "The amount of supervision and control actually exercised is not the crucial question, but rather the amount of supervision and control reserved by the principal from the nature of the relationship." Fuller, 530 So.2d at 1289. A review of the record shows that Mr. Hebert retained substantial control over the guides' activities. Mr. Hebert chose which sports the guides would hunt with and which blinds they would be assigned. Mr. Harrington testified that he had never approached a sport at the Gueydan Duck Club to offer his services as a guide. Instead, he testified that his contact with the sports was regulated by Mr. Hebert.
An independent contractor is only under the control of his principal as to results of his work, not as to the means by which such result is accomplished. See La.R.S. 23:1021(6). Here, the facts indicate that Mr. Hebert retained control over the means used by the guides. Mr. Hebert maintained a hunting club and leased acreage for the guides to use. Mr. Hebert provided water to this acreage, blinds, and decoys used to hunt the duck and geese. Mr. Hebert also provided cellular phones and transportation to the guides in order to facilitate communication and transportation between the base camp and the blinds. Accordingly, it is clear from the record that Mr. Hebert had the power of control regarding the work performed by the guides.
Based on the foregoing discussion, we find that the trial court erred in finding that Mr. Harrington was an independent contractor, instead of an employee. Therefore, Mr. Harrington is entitled to medical benefits as provided for in La.R.S. 23:1201.

PENALTIES AND ATTORNEY FEES
In his fourth assignment of error, Mr. Harrington argues that the workers' compensation judge erred in failing to award him penalties and attorney fees. Mr. Hebert responds by arguing that the penalties and attorney fees are not warranted in this case because the claim was reasonably controverted. The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation proceeding is a question of fact, and we will not disturb a workers' compensation judge's findings absent manifest error. See Wiltz v. Baudin's Sausage Kitchen, 99-930 (La.App. 3 Cir. 6/19/00); 763 So.2d 111, writ denied, 00-2172 (La.10/31/00); 771 So.2d 650.
Penalties and attorney fees for the nonpayment of medical benefits are provided under La.R.S. 23:1201, which provides:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in *656 the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Penalties and attorney fees are warranted when workers' compensation benefits are not provided as required by law. See Clifton v. Rapides Reg'l Med. Ctr., 96-509 (La.App. 3 Cir. 10/9/96); 689 So.2d 471. Penalties and attorney fees will not be awarded; however, where the claim is reasonably controverted, or the nonpayment results from conditions over which the employer had no control. See La.R.S. 23:1201(F)(2); Gibson v. Dynamic Indus., Inc., 96-1605 (La.App. 3 Cir. 4/2/97); 692 So.2d 1320.
We have reviewed the record and determined that this claim was reasonably controverted. While the facts of this case show that Mr. Harrington should receive workers' compensation benefits, they are such that a good faith denial of the claim could be made. Accordingly, we hold that the trial court did not err in failing to award penalties and attorney fees.

DECREE
Considering the foregoing discussion, we find that the workers' compensation judge erred in finding judgment in favor of Mr. Hebert against Mr. Harrington. We find that Mr. Harrington is Mr. Hebert's employee and as such is entitled to the medical benefits due under the provisions of La.R.S. 23:1201. As we find that the claim is reasonably controverted, we will not award Mr. Harrington penalties and attorney fees for the denial of medical benefits. Costs are assessed against Mr. Harrington. This judgment shall bear interest from the date of judgment.
REVERSED.
SULLIVAN and PICKETT, JJ., dissent.
NOTES
[1] Mr. Hebert and his employees use the term "sports" to refer to the hunters who used the Gueydan Duck Club.
[2] A "rag hunt" is a hunt where white plastic bags are placed upon the ground instead of the usual shell decoys.