[ .LOVE, Judge.
Plaintiff, Anthony Campora (hereinafter “Campora”), filed an action against defendant, Falstaff, L.L.C. (hereinafter “Falstaff”), seeking Workers’ Compensation benefits for injuries he allegedly suffered on May 22, 1998. On May 26, 2001, the trial court awarded judgment in favor of Campora, as well as temporary total indemnity benefits, supplemental earnings benefits, penalties and attorney’s fees. For the reasons outlined below, we reverse the ruling of the trial court.

*391
FACTS AND PROCEDURAL HISTORY

Campora filed his claim on August 27, 1998, seeking Workers’ Compensation benefits after he fell from a ladder while scrapping metal on the Falstaff brewery-premises. On December 9, 1999, Campora amended his petition adding Louisiana Workers’ Compensation Corporation (hereinafter “LWCC”), Falstaffs insurer, as a defendant.
Campora claims that Roger T. “Mickey” Boes (hereinafter “Boes”) hired him to remove and sell scrap metal from the Falstaff brewery building. Boes is partial owner of Falstaff. Campora claims that Boes made an arrangement with him to scrap and sell metal from the Falstaff building and split the profits, | ^unbeknownst to Boes’ partner Larry Hamm. Boes and LWCC contend that there was no such arrangement, that Cam-pora was not an employee of Falstaff, and that Campora was on the Falstaff premises scrapping metal without permission. Alternatively, the defendants maintain that even if an employment relationship existed, Campora is able to earn at least 90% of his alleged wages and therefore not entitled to indemnity benefits.
The trial court found that Falstaff failed to rebut the presumption that Campora was an employee under La. R.S. 23:1044. Further, the trial court found that Campo-ra is entitled to temporary total indemnity benefits from the date of the accident through November 30, 2000, at $350.00 per week, subject to a credit for indemnity benefits paid. The trial court also found that Campora is entitled to supplemental earnings benefits based upon an earning capacity of $6.50 per hour at $249.35 per week from November 30, 2000, and'continuing for a period not to exceed 520 weeks, or until Campora can earn at least 90% of his pre-injury wages, whichever occurs first, subject to a credit for any and all total temporary disability benefits paid. Campora was awarded penalties of $4,000.00 or 12% of indemnity benefits due and 12% of medical benefits due, whichever is greater, and attorney’s fees in the amount of $15,000.00.
It is from this judgment that Falstaff and LWCC file the instant appeal.

DISCUSSION

A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, Through Department of Transportation and Development, 617 So.2d 880, 882. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Id. ^However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. Id.
The trial court found that Falstaff failed to rebut the presumption of employment created by R.S. 23:1044, which states in pertinent part:
A person rendering service for another in any trades, business or occupations covered by this chapter is presumed to be an employee ...
This presumption is rebuttable. The alleged employer bears the burden of proof in overcoming this presumption and showing that a worker was not his employee for workers’ compensation purposes. Harrington v. Hebert, 2000-1548, pp. 5-6 (La.App. 3 Cir. 5/23/01), 789 So.2d 649, 653. The presumption of La. R.S. 23:1044 may be rebutted upon proof that there was no *392 contract of employment, express or implied, between the alleged employee and the alleged employer. Shelvin v. Waste Management, Inc., 580 So.2d 1022, 1026 (La.App. 3 Cir.1991). Additionally, an alleged employer can rebut this presumption by establishing that the services were not “pursuant to any trade, business, or occupation.” Hillman v. Comm-Care, Inc., 2001-1140, p. 6 (La.1/15/02), 805 So.2d 1157, 1161.
In the instant case, we find that the trial court committed error in finding that Falstaff did not rebut the presumption of employment created by La. R.S. 23:1044. Falstaff presented ample evidence of its employment procedures, including applications for employment, payroll, tax, and insurance information, and demonstrated that it 'kept these records for all employees,' but that it had no such records for Campora. In addition, Boes denies that he hired Campora and | ¿disavowed any knowledge of an arrangement between them to sell scrap metal. We find this evidence sufficient proof to rebut the presumption that Campora was an employee of Falstaff. Therefore, further analysis is required to determine whether an employer-employee relationship existed.
Each workers’ compensation case must be decided on its own particular facts as to whether an employment relationship exists. Harrington, 2000-1548 at pp. 5-6, 789 So.2d at 653. In doing so the court must take into consideration the total economic relationship between the parties and the various facts weighing for or against a finding of an employment relationship. Id. The court must inquire into the true nature and character of the relationship between the parties based on ác-tual facts, rather than how the parties characterized themselves. Id.
A prerequisite to any workers’ compensation action is the existence of an employer-employee relationship. Jordan v. Central Management Co., 99-0748, p. 7 (La.App. 3 Cir. 10/13/99), 745 So.2d 116, 120 (citing Boswell v. Kurthwood Manor Nursing Home, 94-0703 (La.App. 3 Cir. 12/7/94, 647 So.2d 630). The claimant bears the burden of proving the employer-employee relationship by a preponderance of the evidence. Id. The employment relationship is evidenced by four factors: 1) selection and engagement, 2) payment of wages, 3) power of dismissal, and 4) power of control. No single factor is determinative, but the totality of the circumstances must be considered. Id. Campora failed to demonstrate that any of the four factors listed above existed between he and Falstaff to evidence an employment relationship.
Selection and Engagement
The ultimate power of selection is determinative of status. Rush v. Employers National Insurance Co., 598 So.2d 603 (La.App. 4th Cir.1992). Campora testified 1 Kthat Boes asked him to scrap metal at the Falstaff Brewery and split the profits of the sale of the metal with him, unbeknownst to Boes’ partner Larry Hamm. Boes vehemently denies that he ever asked Campora to do any work at the Falstaff Brewery. Campora produced no other evidence that he was hired by Boes to work at Falstaff. There is no employment application, though Falstaff produced evidence that all of its employees filled out an employment application, or other records that prove that Campora was employee of Falstaff. There were no employees of Falstaff to testify on Campora’s behalf, only the vague memory of Jeff Dauzet, an Environmental Specialist for the State, who claims only to have seen Campora on the premises while he was conducting an Asbestos investigation. Boes testified that there were many instances where vagrants *393 were scrapping metal without permission and were escorted off the premises; he stated that Campora was engaged in this activity.
Payment of Wages
Campora did not produce any evidence that he was paid by Falstaff. He testified that Boes paid him solely in cash, and he did not present any tax returns, check stubs, or receipts for the scrap metal he allegedly sold for Falstaff. Falstaff presented evidence of the payroll and tax records it keeps for each employee, and demonstrated that no such records existed for Campora. Furthermore, Boes denies that he paid Campora in cash for the work he had allegedly done on the Falstaff brewery premises.
Power of Dismissal
This factor focuses on whether the work undertaken can be discontinued or terminated by either party with out a corresponding liability for its breach. Rush, 598 So.2d at 606-607. The right to terminate a worker’s services at will are | ¿indicative of control on the principal’s part. Id. In this case Falstaff maintains that it had no right of dismissal, since according to the testimony Campora had no right to be on the premises. Boes testified that Campora was a trespasser who was scrapping metal without permission. Campora presents no evidence that he was subject to dismissal by Falstaff other than being escorted off the premises as a trespasser.
Power of Control
This factor is the linchpin of the employer-employee relationship. One element indicative of this type of control is supervision of the work by the principal. Rush, 598 So.2d at 607. Again there was no evidence presented at trial that Boes was exercising control over Campora’s actions. Boes and Campora were never seen together on the Falstaff premises. There was no testimony of other employees presented to buttress Campora’s claims, or any other evidence demonstrating that Campora worked under the supervision of Boes.
Campora lacks evidence to corroborate testimony that he and Boes made an arrangement to sell scrap metal. Boes vehemently denies Campora’s testimony that they had a deal to scrap metal and share the profits; however, even if we take Cam-pora’s testimony as true, his account of the arrangement describes what appears to be a side deal between he and Boes. Falstaff did not benefit from the deal described by Campora, especially since Boes’ partner Larry Hamm was allegedly cut out of the deal. Since Falstaff was not the beneficiary of Campora’s alleged labor, it cannot be construed the he was an employee of Falstaff, even under the most liberal interpretation.
Our review of the record reveals no evidence to support Campora’s contention that he was an employee of Falstaff. There is no paper trail evidencing |7employment, nor are there witnesses to verify Campora’s employment status. Therefore, the trial court’s finding that Campora was an employee of Falstaff is clearly wrong.

CONCLUSION

We find, for the reasons outlined above, that there was no employer-employee relationship between Falstaff and Campora. Therefore, Campora is not entitled to Workers’ Compensation benefits. Accordingly, the judgment of the trial court is reversed.
REVERSED.