WALTER J. ROTHSCHILD, Judge.
1 ¡.Defendants, Carolyn Rowe-Treaudo and Conquering Word Ministries d/b/a Conquering Word Christian Academy, seek review of the worker’s compensation court’s May 25, 2010 judgment in favor of claimant, Peter Williams. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

This case arises from an accident that occurred on August 14, 2007 at Conquering Word Christian Academy (“CWCA”), which is a school that was formed and operated by Carolyn Rowe-Treaudo. Pri- or to that date, a vehicle struck a brick wall of CWCA’s building. Peter Williams asserts that he was working as a “jack of all trades” or handyman at CWCA in 2007 and that Ms. Rowe-Treaudo asked him to assist in repairing the wall. According to Mr. Williams, while he was performing his duties, the brick wall collapsed, causing injuries to his head, back, right knee, right hip, and right shoulder.
After the accident, Ms. Rowe-Treaudo brought him to see Dr. Michael Russo, and she paid for this doctor visit. However, she did not pay for any further medical treatment or any wages lost as a result of this accident. Mr. Williams filed |sa Disputed Claim for Compensation against CWCA and Ms. Rowe-Treaudo, seeking disability benefits and medical expenses, as well as penalties and attorney fees for defendants’ arbitrary and capricious actions.
Trial was held on March 10 and 29, 2010. At trial, Carolyn Rowe-Treaudo testified that she owns the nonprofit corporation of Conquering Word Ministries. She testified that a car damaged a brick wall of their building on the last day of summer school in 2007. She stated that her husband, Roland Treaudo, is in charge of maintenance at CWCA and that he temporarily repaired the wall with plywood until they could get a professional masonry brick layer to properly repair the wall.
Ms. Rowe-Treaudo testified that she rented property to Mr. Williams and he attended their church, but he never worked at the school. Mr. Williams would sometimes come to the school to discuss why he did not have the money to pay his rent. She stated that on August 14, 2007, Mr. Williams “just came off the street and unfastened the temporary wall,” but he was not repairing it. She testified that she did not direct Mr. Williams to perform any work with regard to the damaged wall. Ms. Rowe-Treaudo admitted that she took Mr. Williams to Dr. Russo’s office on the day of the incident and that she paid for his medical care that day. However, she stated that she did this because he was a part of their ministry, not because he was an employee of CWCA.
Roland Treaudo testified that he is married to Carolyn Rowe-Treaudo, and his job is to perform the maintenance work at *505 CWCA. Mr. Treaudo admitted that Mr. Williams did some work for him and his wife, but he stated that the work was not at CWCA; rather, the work was always performed away from the school property. He testified that Freddie Thornton assisted him with maintenance work at the school, and Mr. Williams did not. Mr. Treaudo testified that after the brick 14wall was struck by a vehicle, he shored it up with plywood and two by fours. He stated that Mr. Williams was never asked to help and did not help to fix the wall.
Peter Williams testified that on August 14, 2007, he was working for Ms. Rowe-Treaudo at CWCA. He indicated that he was basically a handyman at the school and that he performed general maintenance, repair, and cleaning tasks. He stated that he did not fill out an employment application or tax forms, but they worked out an informal agreement whereby he would work eight hours per day and forty hours per week.[1] He testified that Ms. Rowe-Treaudo paid him approximately $820 per week in cash.
Mr. Williams testified that after the brick wall was struck by a vehicle, he boarded it up and Mr. Treaudo helped him. Ms. Rowe-Treaudo asked him to help repair the brick wall by doing preparation work, such as clearing away broken bricks and cutting sheetrock, but not the brick work. While performing his duties, the wall collapsed and bricks hit him, causing injuries to his head, shoulder, leg, hip, and knee. Ms. Rowe-Treaudo took him to see Dr. Russo and paid for the initial visit, but he did not receive any other compensation or benefits from defendants.
Mr. Williams testified that he used to live at one of the properties owned by Ms. Rowe-Treaudo. When he was behind on his rent and told Ms. Rowe-Treaudo that he was not getting enough hours at his job, she said she had work for him doing general maintenance and repairs. Thereafter, he worked at CWCA for close to a year and Ms. Rowe-Treaudo also sent him on jobs at other locations. Mr. Williams admitted that he did not fill out a time sheet, punch a time clock, or keep a daily record of his hours, but he stated that Ms. Rowe-Treaudo kept a record of them.
IsGwendolyn Keller testified that she worked at CWCA as a teacher from August 2006 to May 2008. She identified a copy of her school identification card, a copy of her May 15, 2008 pay check, and a letter from Ms. Rowe-Treaudo indicating that she was a teacher in CWCA’s Preschool Development program from August 2006 to May 2008. Ms. Keller testified that Mr. Williams worked at the school and that he repaired broken things, built furniture for the playground, fixed a hole in a wall in the hallway, fixed plumbing in the bathrooms, changed light bulbs, and took out trash. She testified that when Mr. Williams was injured while working on the brick wall, she heard a noise and, when she went to see what was going on, Mr. Williams was sitting on the stairs bleeding.
On May 25, 2010, the worker’s compensation judge rendered a judgment in favor of Mr. Williams, finding, in pertinent part, that:
1) Mr. Williams was injured by accident during the course and scope of his employment on August 14, 2007.
2) Mr. Williams is entitled to temporary total disability benefits from August 4, 2007 through September 18, 2007.
*506 3) Mr. Williams is entitled to payment of all medical and transportation expenses.
4) Mr. Williams has permanent scarring and disfigurement and is entitled to 50 weeks of compensation for this scarring.
5) Mr. Williams’ average weekly wage is $320.00.
6) Defendants did not reasonably controvert the claim and failed to timely pay worker’s compensation benefits.
7) Mr. Williams is entitled to $6,000 for multiple penalties and $6,000 for attorney fees from defendants for failing to timely pay medical expenses and weekly indemnity benefits. All costs are assessed against defendants as well.
8) Carolyn Rowe-Treaudo, CWCA, and Conquering Word Ministries failed to have worker’s compensation insurance on August 14, 2007, and thus, Mr. Williams is entitled to a 50 percent increase in the amount of weekly compensation owed.
|f,9) The case is being transferred to Baton Rouge for defendants’ failure to have worker’s compensation insurance and for the discrepancy in testimony by the employer concerning employment and payment of wages.
Defendants appeal this judgment.

LAW AND DISCUSSION

In their first assignment of error, defendants contend that the worker’s compensation judge erred in finding that Peter Williams was an employee of CWCA at the time of the accident and/or a compensable injury occurred within the course and scope of employment. They assert that Ms. Rowe-Treaudo had rental property and that Mr. Williams was her tenant, but he was never an employee of Ms. Rowe-Treaudo or CWCA. They state that there are no personnel records, time cards, contracts, paycheck stubs, identification card, or other evidence to show that Mr. Williams was their employee. Accordingly, defendants claim that they did not owe any compensation or medical expenses to Mr. Williams, and thus, the worker’s compensation court’s judgment was in error.
Mr. Williams responds that his testimony, along with the testimony of Gwendolyn Keller, established that he was in fact an employee of CWCA at the time of the accident. He further argues that the worker’s compensation judge evaluated the credibility of the parties and found him to be more credible than Ms. Rowe-Treaudo.
Pursuant to LSA-R.S. 23:1044, a person who renders services in any trade, business or occupation covered under the Worker’s Compensation Law is presumed to be an employee of the person for whom he rendered such services. Dustin v. DHCI Home Health Services, Inc., 95-1989 (La.App. 1 Cir. 5/10/96), 673 So.2d 356, 359. This presumption may be rebutted by proof that there was no contract of employment, either express or implied, between the alleged employee |7and alleged employer. Gotto v. ARA Living Center; 570 So.2d 1172, 1174 (La.App. 5 Cir.1990), writ denied, 571 So.2d 634 (La.1990); Shelvin v. Waste Management, Inc., 580 So.2d 1022, 1026 (La.App. 3 Cir.1991). The employer bears the burden of proof in overcoming the statutory presumption and showing that a claimant was not an employee for worker’s compensation purposes. Olivier v. Olivier Builders, 09-208, p. 9 (La.App. 3 Cir. 9/9/09), 19 So.3d 573, 581, writ denied, 09-2189 (La.12/11/09), 23 So.3d 918.
In worker’s compensation cases, appellate review is governed by the manifest error or clearly wrong standard. Harrington v. Hebert, 00-1548, p. 6, (La.App. 3 Cir. 5/23/01), 789 So.2d 649, 652-653; *507 Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737. Under this standard of review, an appellate court may only reverse a worker’s compensation judge’s factual determinations if it finds from the record that a reasonable factual basis for the finding does not exist, or that examination of the entire record reveals that the finding is clearly erroneous. Winborne v. Sanderson Farms, 06-2272, p. 4 (La.App. 1 Cir. 9/14/07), 971 So.2d 342, 345.
Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.; Cannet v. Franklynn Pest Control Co., Inc., 08-56, p. 5 (La.App. 5 Cir. 4/29/08), 985 So.2d 270, 274. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. Winborne v. Sanderson Farms, 06-2272 at 4, 971 So.2d at 345; Lafleur v. Alec Electric, 04-0003, p. 4 (La.App. 1 Cir. 12/30/04), 898 So.2d 474, 478, writs denied, 05-276, 05-277 (La.4/8/05), 898 So.2d 1287, 1288.
|sIn the present case, CWCA is a school which undoubtedly requires maintenance services and repairs at times in order to operate. There was conflicting testimony regarding whether or not claimant, Peter Williams, was employed by CWCA to perform maintenance services at the time of the accident. Ms. Rowe-Treaudo and Mr. Treaudo testified that Mr. Williams was not an employee of CWCA and was never asked to perform work at the school. On the other hand, Mr. Williams and Ms. Keller testified that Mr. Williams was, in fact, an employee of CWCA and that he performed maintenance services and repair work there. The worker’s compensation judge apparently chose to believe the testimony of Mr. Williams and Ms. Keller over the testimony of Ms. Rowe-Treaudo and Mr. Treaudo. As stated above, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly wrong.
Although Mr. Williams did not provide documentation to substantiate his employment, he contends that Ms. Rowe-Treaudo did not require him to complete an employment application or sign in or out daily. He claims that Ms. Rowe-Treaudo kept a record of his hours and paid him $8 per hour for approximately 40 hours per week. The worker’s compensation judge apparently chose to believe Mr. Williams’ testimony. Even if this Court were to evaluate the evidence differently, we cannot say that the worker’s compensation judge’s findings were unreasonable and thus, we cannot disturb her findings on review.
Ms. Rowe-Treaudo and CWCA rely on Campora v. Falstaff, L.L.C., 01-2014 (La.App. 4 Cir. 6/12/02), 823 So.2d 389, writ denied, 02-1918 (La.10/25/02), 827 So.2d 1160, in support of their position that they rebutted the presumption that Mr. Williams was an employee of CWCA. In that case, the claimant, Mr. Campora, asserted that he had been hired by Mr. Boes, a partial owner of Falstaff, to remove and sell scrap metal, and he was injured when he fell 1 nfrom a ladder on the Falstaff premises. Id. at 1-2, 823 So.2d at 391. Mr. Campora sought worker’s compensation benefits from Falstaff and was awarded benefits from the worker’s compensation court. The Fourth Circuit reversed, finding that Falstaff had rebutted the presumption of employment created by LSA-R.S. 23:1044. The Court noted that Falstaff presented ample evidence of its employment procedures, including applications for employment, payroll, tax, and *508 insurancé information, and demonstrated that it kept these records for all employees, but that it had no such records for Mr. Campora. Campora v. Falstaff, L.L.C., at 3-4, 823 So.2d at 392. In addition, Mr. Boes denied that he hired Mr. Campora and disavowed any knowledge of an arrangement between them to sell scrap metal. Id.
We agree with Mr. Williams that while some of the facts in Campora are similar to the facts of the instant case, they are distinguishable. In Campora, the Fourth Circuit noted that in addition to the lack of a paper trail evidencing employment, there also were no employees of Falstaff to testify on Mr. Campora’s behalf. Campora v. Falstaff, L.L.C., 01-2014 at 6-7, 823 So.2d at 393. However, in the present case, Gwendolyn Keller testified on Mr. Williams’ behalf and supported his position that he was an employee of CWCA. Further, Ms. Rowe-Treaudo and CWCA did not present ample evidence of its employment procedures, as was done in Campora. Also, unlike Campora, in the present case, the alleged employer took the claimant to the doctor when the accident occurred and paid for the initial visit.
Each worker’s compensation case must be decided on its own particular facts as to whether or not an employment relationship exists. Harrington v. Hebert, 00-1548 at 5-6, 789 So.2d at 653. Considering the particular facts set forth by the testimony and evidence in the instant case, we cannot say that the worker’s | ^compensation judge’s finding of an employment relationship is clearly wrong or manifestly erroneous. Accordingly, defendants’ first assignment of error is without merit.
In their second assignment of error, Ms. Rowe-Treaudo and CWCA assert that the worker’s compensation judge erred in assessing penalties and attorney fees as a result of CWCA failing to reasonably controvert Mr. Williams’ claim. They contend that no compensation or medical benefits were paid due to the fact that CWCA reasonably contested the existence of an employer/employee relationship. They claim that the worker’s compensation judge’s finding that their failure to pay was unreasonable was manifestly erroneous.
When an employer has failed to pay worker’s compensation benefits, the proper standard for review of that decision is whether the employer reasonably controverted the claim. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 889. A claim for worker’s compensation is reasonably controverted if the employer has some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under LSA-R.S. 23:1201, a court must ascertain whether the employer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay the benefits allegedly owed. Arias v. Certified Coating, Inc., 05-446, pp. 6-7 (La.App. 5 Cir. 2/14/06), 924 So.2d 298, 302-303. Whether the refusal to pay benefits warrants the imposition of penalties and attorney fees is a factual question, which we will not disturb in the absence of manifest error. Roberts v. Thibodaux Healthcare Center, 05-774, p. 9 (La.App. 1 Cir. 3/24/06), 934 So.2d 84, 91; Noel v. Home Health 2000, Inc., 01-1543, p. 2 (La.App. 3 Cir. 5/8/02), 816 So.2d 955, 957.
In the May 25, 2010 judgment, the worker’s compensation judge found that *509 defendants failed to reasonably controvert Mr. Williams’ claim and failed to timely pay worker’s compensation benefits. The worker’s compensation judge had evaluated the credibility of the witnesses and found that Mr. Williams was an employee of Ms. Rowe-Treaudo and CWCA, and that he was injured during the course and scope of his employment. Defendants did not present any pertinent evidence or argument, other than denial of employment status, to show that Mr. Williams’ claim was reasonably controverted.
Considering the record before us, we cannot say that the worker’s compensation judge was manifestly erroneous or clearly wrong in finding that defendants failed to reasonably controvert Mr. Williams’ claim and in assessing penalties and attorney fees against defendants. Accordingly, this assignment of error is without merit.
In their third assignment of error, Ms. Rowe-Treaudo and CWCA claim that the worker’s compensation judge erred in assessing multiple penalties and attorney fees as a result of CWCA’s failure to timely pay medical bills, medication expenses, and weekly indemnity benefits. Defendants did not brief the issue of why multiple penalties should not be assessed. Rather, they stated simply that the award of penalties should be reversed, because Mr. Williams was not an employee of CWCA and, as such, there was a reasonable basis to controvert the claim and refuse to pay benefits.
Considering our ruling that the worker’s compensation judge did not err in finding that Mr. Williams was an employee of Ms. Rowe-Treaudo and CWCA, and h^that they failed to reasonably controvert his claim, we find no merit in the argument presented in the third assignment of error.
After considering Peter Williams’ Motion for Attorney Fees, we order that it is hereby denied.

DECREE

For the foregoing reasons, we affirm the May 25, 2010 judgment of the worker’s compensation court, and we deny Peter Williams’ Motion for Attorney Fees.

AFFIRMED; MOTION FOR ATTORNEY FEES DENIED

. Mr. Williams admitted that some time before the accident, he "slacked off” and was only working about 20 to 30 hours per week. However, the amount of the weekly benefits awarded is not complained of on appeal.