# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 04-1630

CYNTHIA O. RIVETTE

VERSUS

DENNIS W. RIVETTE

************

APPEAL FROM THE
SIXTEENTH  JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 101991
HONORABLE WILLIAM D. HUNTER, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter and
James T. Genovese, Judges.

**Painter, J. dissents and assigns written reasons.**

                                                          AFFIRMED.

Richard R. Kennedy
Richard R. Kennedy, III
309 Polk Street
Post Office Box 3243
Lafayette, Louisiana 70502-3243
COUNSELORS FOR DEFENDANT/APPELLANT:
      Dennis W. Rivette

Elizabeth A. Dugal
1207 Lafayette Street
Post Office Box 2885
Lafayette, Louisiana  70502-2285
COUNSEL FOR DEFENDANT/APPELLANT:
      Dennis W. Rivette

Anthony Thibodeaux
Post Office Box 3545
701 Johnston Street
Lafayette, Louisiana  70502-3545
COUNSEL FOR PLAINTIFF/APPELLEE:
      Cynthia O. Rivette

**GENOVESE, Judge.**

This is an appeal by the husband from a judgment dismissing a cause of action for divorce based upon the reconciliation of the parties. We affirm.

## PROCEDURAL BACKGROUND

Cynthia and Dennis Rivette were married on May 9, 1998, and thereafter established their matrimonial domicile in Iberia Parish. They have one child, Aiden, born March 8, 1999. On November 1, 2003, the parties separated when Mr. Rivette moved out of the marital domicile.

Initially, Mr. and Mrs. Rivette saw a mediator in an effort to amicably negotiate the many details associated with the impending dissolution of their marriage. With the assistance of the mediator, the couple purportedly negotiated both a joint custody arrangement and a partition of their community property.

On December 16, 2003, Mrs. Rivette filed a petition for divorce in accordance with La.Civ.Code art. 102 ("102 divorce") seeking joint custody of the couple's son, and seeking to have child support set in an amount to which the parties allegedly agreed in mediation. On December 23, 2003, Mr. Rivette accepted service and waived citation of the petition for divorce.

The efforts made toward perfecting an amicable arrangement purportedly fell through in the early part of January of 2004. At that time, Mrs. Rivette executed both the joint custody agreement and the community property settlement. Mr. Rivette, however, signed the community property settlement, but refused to sign the joint custody agreement. He instead demanded that the mediator release the community property settlement to him so that it could be recorded. The mediator refused to release the community property settlement document to Mr. Rivette based on his understanding that the documents were part of a "package deal."

1

On March 1, 2004, Mrs. Rivette filed a rule to terminate the community property regime alleging that she and Mr. Rivette had been living separate and apart without reconciliation since the filing of the original petition in this proceeding on December 16, 2003. Mrs. Rivette signed an affidavit dated February 17, 2004, verifying that the facts contained in her rule to terminate the community property were true and correct. Mr. Rivette accepted service and waived citation of the rule to terminate the community property on February 5, 2004.

On March 25, 2004, Mrs. Rivette filed motions to dismiss her previously filed petition for 102 divorce, and to dismiss her rule to terminate community property due to "a period of reconciliation of the parties."

On April 13, 2004, Mr. Rivette filed a rule to show cause asking the court to order the mediator to release the community property settlement documents for recordation.

On April 26, 2004, Mrs. Rivette filed a rule for interim and final spousal support wherein she stated that since the filing of the petition for divorce on December 16, 2003, "the parties reconciled for a brief period of time, but have since physically separated again."

This matter was heard on June 30, 2004, and the trial court rendered judgment in favor of Mrs. Rivette dismissing her petition for 102 divorce on the basis of reconciliation. Mr. Rivette appeals.

## LAW AND DISCUSSION

Mr. Rivette brings this appeal assigning as error the trial court's dismissal of this divorce action on the grounds of reconciliation. The trial court concluded that a reconciliation had occurred; thus, it extinguished the cause of action for divorce. Finding no manifest error, we agree.

2

A divorce action filed pursuant to La.Civ.Code art. 102 provides:

Except in the case of a covenant marriage, a divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that one hundred eighty days have elapsed from the service of the petition, or from the execution of written waiver of the service, and that *the spouses have lived separate and apart continuously for at least one hundred eighty days* prior to the filing of the rule to show cause. (emphasis added).

Mrs. Rivette did not file a motion for judgment of divorce. Instead, she filed a motion to dismiss her petition for divorce on grounds of reconciliation alleging that the parties had lived together after their separation.

In his testimony, Mr. Rivette asserts that the parties did not resume living together as husband and wife. Mr. Rivette contends this is evidenced by the fact that the he moved in with a friend, Rule Boutte, and Mr. Boutte's girlfriend, Nicole Douet. Mr. Boutte confirmed that Mr. Rivette pays rent to live with him; Mr. Boutte also stated that Mr. Rivette moved his clothes into Mr. Boutte's home, and that later Mr. Rivette moved other items to his home such as his lawn mower, pressure washer, and ice chests. Though Mr. Boutte works offshore on a 14/14 schedule, he testified that he was not aware of Mr. Rivette ever moving back into the marital home with Mrs. Rivette. Likewise, Ms. Douet testified she had no knowledge of a reconciliation between Mr. and Mrs. Rivette.

Mrs. Rivette, however, testified that Mr. Rivette did return to live with her and their son in mid-February 2003. Mrs. Rivette testified that he returned home with a large suitcase of his clothes and that she and Mr. Rivette resumed living together as a couple, mutually cared for their son, resumed their sexual relationship, and went out together in social settings with family and friends as a couple until they again separated early in March 2003. Mrs. Rivette contends that Mr. Rivette listed the marital home's address on his driver's license when it came up for renewal in late-

3

February 2003 because they had reconciled.

The appropriate test for determining whether the Rivettes were entitled to a final divorce pursuant to La.Civ.Code art. 102 is whether the parties lived separate and apart continuously for 180 days, without reconciliation, after service of such petition on the other party, or the signing of a waiver of service by the other party. *Lemoine v. Lemoine*, 97-1626 (La.App. 3 Cir. 7/1/98), 715 So.2d 1244. In *Lemoine*, this court stated:

> Reconciliation occurs when there is a mutual intent to reestablish the marital relationship on a permanent basis. *Woods*, [27,199 (La.App. 2 Cir. 8/23/95)], 660 So.2d 134. "The motives and intentions of the parties to restore and renew the marital relationship is a question of fact determined by the trial judge from the totality of the circumstances." *Id.* at 135.

*Lemoine*, 715 So.2d at 1248-49.

The standard of review for courts of appeal is well established. In *Rosell v. ESCO*, 549 So.2d 840,844 (La.1989), the supreme court stated:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

In its oral reasons for judgment the trial court expressly stated:

> I find, based on my observations and appraisal of the testimony of Dennis Wayne Rivette, that he did in fact move back with his wife in February. I'm not too sure of [sic] manipulation was not the reason that he led her to believe they were reconciling, she felt, for her own reasons, that because of her son, Aiden, and also because she wanted to motivate him to do something for her.

It is clear that the trial court made a demeanor and credibility determination.

The function of the appellate court is not to superimpose its judgment upon a trial court. The trier of fact is in the best position to assess the demeanor and judge

4

the credibility of witnesses when there is conflicting testimony.

Following our review of the record, we do not find that the trial court was clearly wrong in ruling that a reconciliation had occurred in this case. The trial court considered the demeanor and credibility of the parties and witnesses, and concluded that Mr. and Mrs. Rivette had reconciled, and therefore, did not have the continuous separation required for the 102 divorce. The trial court's finding that a reconciliation took place is reasonably supported by the record and is not manifestly erroneous.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Mr. Dennis W. Rivette.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1630

CYNTHIA D. O. RIVETTE

VERSUS

DENNIS W. RIVETTE

**PAINTER, J., dissenting.**

I must respectfully dissent from the majority's opinion that there was no manifest error in the trial judge's finding that a reconciliation occurred under the facts of this case. I would reverse the judgment of the trial court because the record is devoid of any reasonable factual basis for the finding of a reconciliation between the parties and establishes that such a finding is clearly wrong.

It is important to note that the majority opinion does not consider the burden of proof imposed on the party claiming reconciliation. Reconciliation is an affirmative defense and the party who relies on reconciliation as a defense bears the burden of establishing it by a preponderance of the evidence. *Walker v. Walker*, 159 So.2d 344 (La.App. 2 Cir. 1963). Based on the evidence and testimony presented to the trial court, Ms. Rivette clearly did not meet this burden for the reasons that follow.

First, "[r]econciliation occurs when there is mutual intent to re-establish the marital relationship on a permanent basis." *Lemoine v. Lemoine*, 97-1626, p. 5 (La.App. 3 Cir. 1998), 715 So.2d 1244, 1248, *writ denied*, 98-2092 (La. 11/13/98), 730 So.2d 1244, *citing Woods v. Woods*, 27,199 (La.App. 2 Cir. 08/23/95), 660 So.2d 134. "The motives and intentions of the parties to restore and renew the marital relationship is a question of fact to be determined by the trial judge from the totality of the circumstances." *Id. quoting Woods v. Woods*, 660 So.2d at 135.

The time line of court filings in this case is of paramount importance and must be considered in the determination of whether a reconciliation occurred. The parties agree that they physically separated on November 1, 2003. On December 16, 2003, Ms. Rivette filed her Petition for Divorce. On March 1, 2004, Ms. Rivette filed a Rule to Terminate Community Property Regime in which she alleged that she and Mr. Rivette "have lived separate and apart continuously, without reconciliation, since the filing of the original petition in this proceeding on December 16, 2003." The Affidavit of Verification accompanying this Rule was signed by Ms. Rivette on February 17, 2004. Mr. Rivette accepted service and waived citation, etc. by waiver signed February 5, 2004. On March 25, 2004, Ms. Rivette filed a Motion for Dismissal of her previously filed Petition for Divorce and Rule to Terminate Community Property Regime due to "a period of reconciliation of the parties." The Affidavit of Verification accompanying this filing was signed by Ms. Rivette on March 24, 2004. It was requested the Mr. Rivette be served with these documents at his place of employment. On April 13, 2004, Mr. Rivette filed a Rule to Show Cause to have Ms. Rivette release the original executed Community Property Settlement reached at a mediation that took place in December of 2003. On April 26, 2004, Ms. Rivette filed a Rule for Interim Spousal Support. A Hearing Officer Conference was held on May 17, 2004 at which time Mr. Rivette's Rule to Show Cause was denied and it was ordered that Mr. Rivette pay $500/month in interim periodic spousal support, retroactive to the date of judicial demand. On May 25, 2004, an Interim Consent Judgment was signed dealing with custody and support of the Rivette's minor child. On June 30, 2004, the trial court heard Ms. Rivette's Motion to Dismiss and found that there was a reconciliation between the parties. Then, Ms. Rivette filed a Petition for Protection from Abuse on July 24, 2004 and a new Petition for Divorce

2

on August 11, 2004. On August 16, 2004, the trial court signed a judgment finding that the parties had reconciled thus resulting in the dismissal of the Petition for Divorce filed by Ms. Rivette in December of 2003 and rendering all remaining issues moot.

This time line directly contradicts all of the allegations found in the briefs filed on behalf of Ms. Rivette as well as the totality of her testimony. According to Ms. Rivette's testimony, Mr. Rivette moved back into the former marital domicile in mid-February of 2004 and brought a large suitcase of clothes with him. According to Ms. Rivette, he stayed "about a month." This is wholly inconsistent with her allegation in the March 1, 2004 filing of the Rule to Terminate Community Property Regime that she and Mr. Rivette had lived "separate and apart continuously, without reconciliation since the filing of the original petition in the proceeding on December 16, 2003," which allegations were verified by Ms. Rivette on February 17, 2004. Ms. Rivette tried to say that she was certain Mr. Rivette moved back in after the 17th but she could not prove the exact date he supposedly returned.

Ms. Rivette's briefs indicate that she asked Mr. Rivette to move out on March 19, 2004. Then she testified that she "kicked out" Mr. Rivette a few days before March 29, 2004, when she left for a business trip. Both of these assertions are directly contradicted by the fact that she filed the Motion to Dismiss based on reconciliation on March 25, 2004.

Second, the adverse presumption rule applies. This court, in *Shelvin v. Waste Mgt., Inc.*, 580 So.2d 1022 (La.App. 3 Cir. 1991), has defined this rule as follows:

> Failure of a party to call a witness creates a presumption that the witness's testimony would have been unfavorable, where that party has the burden of proof, or where that party has some control over, or a close relationship with the witness. The presumption does not apply where the witness was equally available to either party.

3

The Louisiana Supreme Court has recently noted that the adverse presumption rule "remains vital, especially in cases, such as this one, in which a witness with peculiar knowledge of the material facts is not called to testify at trial." *Driscoll v. Stucker*, 04-0589, p. 11 (La. 01/19/05), _____ So.2d _____. The court in *Driscoll* further noted that it was incumbent upon the party who bore the burden of proof to call the witness to prove its assertion.

In this case, Ms. Rivette made the conclusory allegation in her testimony that there were "lots of people that saw" the reconciliation and that some of her "best friends knew the situation." However, none of the "lots of people" or "best friends" were even listed as witnesses on the Witness and Exhibit List filed by Ms. Rivette on May 27, 2004. None of these witnesses were called to testify on her behalf at trial, and her testimony acknowledged the fact that none of the alleged witnesses would be called to testify on her behalf. Thus, Mr. Rivette is entitled to the presumption that had these alleged witnesses been called, their testimony would have been unfavorable to Ms. Rivette because Ms. Rivette bears the burden of proving a reconciliation and because these alleged witnesses were not "equally available" to Mr. Rivette in that they were never identified with any particularity.

Third, the only evidence presented by Ms. Rivette that a reconciliation occurred was her own self-serving testimony. Ms. Rivette alleged that there were various text messages that proved that there was a reconciliation. When asked about these, Mr. Rivette testified that he did not recall any such messages but that there were some messages concerning Ms. Rivette's business trip to Boston and his desire to remove, from the former matrimonial domicile, certain personal items which had been left when he moved out in November. Ms. Rivette's attorney did not attempt

to impeach Mr. Rivette's testimony in this regard with the actual text messages. Moreover, these text messages were neither offered nor introduced into evidence.

Moreover, Mrs. Rivette's self-serving testimony is directly contradicted by the record and her actions in instructing her attorney to file pleadings alleging that the parties were separated during the period in which she alleges that a reconciliation took place. In fact, Ms. Rivette even testified that the reason she "kicked out" Mr. Rivette in the last week of March 2004 was because "he kept bringing up legal issues and wanting to get these things settled, the community property, and he wanted those documents filed and from the beginning I had said that there was no way that we could make a marriage work and fight things out in court at the same time." She further testified that she felt like he was "using" her to get what he wanted, which was to get the settlement documents from the mediator that were favorable to him filed.

Mr. Rivette and Ms. Rivette both testified that Mr. Rivette had paid the majority of their monthly expenses during the marriage. Ms. Rivette testified that she was in a "financial bind" during the alleged period of reconciliation. When asked why she was in a financial bind during that time, she stated that it was because Mr. Rivette had not resumed paying the expenses as he had when they were married. She also testified that he knew she was in a financial bind and helped her refinance the house and her vehicle so that they would be in her name alone. Clearly, Ms. Rivette's own testimony that Mr. Rivette wanted to move forward with the legal proceedings to terminate the community shows that Mr. Rivette did not intend to reconcile and re-establish the marital relationship as it existed before their separation.

Ms. Rivette further admitted to her own financial motives in alleging a reconciliation. She testified that she assumed that she would benefit financially if the court found that there had been a reconciliation because the house was now in her

name alone and her vehicle had been refinanced to be in her name alone. Ms. Rivette further testified that she was aware that she could prolong the time she would receive interim spousal support if the court found that a reconciliation occurred.

Ms. Rivette's testimony is further contradicted by the testimony of Mr. Rivette that he never moved back into the house with Ms. Rivette and that he never had any intention of re-establishing the marital relationship. It was Mr. Rivette's testimony that he did go over for dinner several times and spend a few hours on Sunday afternoons with Ms. Rivette and his son in an effort to be more civil and show his son that they could still do things together even though he and Ms. Rivette were living apart. Mr. Rivette further testified that he did spend the night at Ms. Rivette's house on a couple of occasions when Ms. Rivette was out of town on business to care for his son in her absence and when his son was ill to help Ms. Rivette care for him. He did admit to having sex with Ms. Rivette on one occasion but stated that he never intended this to be an act of reconciliation.

The testimonies of Rule Boutte and Nicole Douet also contradict Ms. Rivette's testimony that Mr. Rivette returned to the former marital domicile in February of 2004. Both of these witnesses testified that Mr. Rivette moved in with them in November 2003, paid rent to live with them, never moved back in with Ms. Rivette after November of 2003, and never discussed any intention on his part to reconcile with Ms. Rivette.

Fourth, the case of *Lemoine*, 715 So.2d 1244, also cited by the majority, is particularly instructive in this instance. In that case, this court found that there was no reconciliation despite the fact that the Lemoines went on several out-of-town trips together and had intermittent sexual relations where Mr. Lemoine stayed overnight in the former marital domicile (sometimes for several days at a time). There, this

6

court pointed out that Mr. Lemoine testified that he never intended to return to the marital domicile , that he had rented a separate residence, and that he had never moved his possessions back into the marital domicile. There is even less evidence of a reconciliation in the case at bar. Mr. Rivette testified that he never had any intent to reconcile and that he never returned to the marital domicile other than to care for his son. There is no evidence to the contrary.

Ms. Rivette also attempts to make a mountain out of a molehill with respect to the fact that Mr. Rivette's driver's license continued to recite the former marital domicile as his address even though it was issued after the Petition for Divorce was filed. Mr. Rivette explained that the reason for this was because he could not use the post office box at which he was receiving his mail as an address on the driver's license and the Mr. Boutte did not want Mr. Rivette's mail coming to his residence. This testimony was corroborated by both Mr. Boutte and Ms. Douet and is not sufficient evidence to support a finding of intent to re-establish a marital relationship.

Ms. Rivette's self-serving testimony is not enough, standing on its own and in light of its internal inconsistencies and the evidence presented by Mr. Rivette, to meet her burden of proving that a reconciliation occurred by a preponderance of the evidence.

I also respectfully disagree with the majority's conclusory statement that "[t]he trial court's finding that a reconciliation took place is reasonably supported by the record and is not manifestly erroneous." The majority's opinion fails to point out anything in the record, other than Ms. Rivette's self-serving testimony and uncorroborated allegations, that reasonably supports reconciliation.

"The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding, and 2) whether the

7

record further establishes that the finding is not manifestly erroneous." *Walker v. High Tech Refractory Services, Inc.*, 03-1621 (La.App. 1 Cir. 06/24/04), 885 So.2d 1185, *citing Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

With due regard for the manifest error standard of review and for much the same reasons as I find that Ms. Rivette did not meet her burden of proving a reconciliation, I find that there is no reasonable factual basis for the trial court's conclusion that a reconciliation occurred between Mr. and Ms. Rivette and that this decision on the part of the trial court is rife with manifest error. While it is true that the manifest error standard leaves reasonable evaluations of credibility and reasonable inferences of fact to the discretion of the trial judge, when those determinations are clearly wrong, this court must reverse. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La. 01/14/94).

In this case, I find that there is no reasonable view of the evidence that permits the conclusion that a reconciliation between Mr. and Ms. Rivette occurred. It is clear that the trial judge based his decision on a determination that Ms. Rivette's testimony was more credible than that of Mr. Rivette, Mr. Boutte, Ms. Douet, and the record. However, the only evidence presented by Ms. Rivette in support of her contention that she and Mr. Rivette had reconciled is her own self-serving testimony, which was fraught with significant discrepancies and unsupported by the record or any corroborating testimony. Mr. Rivette steadfastly denied any intent to re-establish the marital relationship and his two roommates corroborated his testimony that he never returned to live at the former matrimonial domicile after November of 2003. Both his actions in moving in with and paying rent to Mr. Boutte, assisting Ms. Rivette in re-financing the former matrimonial domicile and vehicle to be in her name alone, and continuing to press for the resolution of the division of the community, as well as Ms.

8

Rivette's actions in continuing to file court documents in which she alleged a separation with no reconciliation, prove that there was no mutual intent to reconcile. The trial judge appears not to have weighed Ms. Rivette's testimony in light of its inconsistency with itself, other testimony, and the evidence. The trial judge indicated in his reasons for judgment that he "assumed" Mr. Rivette's intent from his actions and based on a determination that Mr. Rivette was a "controlling person." Based on the record in its entirety, the trial judge's finding that reconciliation occurred based on this credibility determination is clearly wrong.

The trial judge himself, in oral reasons for judgment, stated that he was not too sure if manipulation was not the reason Mr. Rivette "led her to believe they were reconciling." He also questioned Ms. Rivette's motives in stating his belief that she "became very interested in property rights and monetary interest rather than just the good of her son."

In sum, reconciliation, by definition, requires a finding of **mutual** intent and contemplates something more than a "trial basis." "The necessary intent must be possessed by both parties, not just one." *Woods v. Woods*, 27,199 (La.App. 2 Cir. 08/23/95), 660 So.2d 134, 135-136. The above statements by the trial judge show that he recognized that there was no mutual intent to re-establish a marital relationship on a permanent basis. The trial judge indicated his belief that the intent of either party may not have been to reconcile but to garner financial gain.

For all of these reasons, I would reverse the findings of the trial court and remand the matter for a determination of the remaining issues consistent with the finding that no reconciliation occurred.

9