FREDERICKA HOMBERG WICKER, Judge.
|2Claimant, Isaac Garcia, appeals the trial court’s judgment denying his claim for workers’ compensation following a trial on the merits wherein the parties, by agreement, submitted the matter to the court by stipulations, exhibits, and plaintiffs deposition, and the workers’ compensation court found claimant did not sustain a compensa-ble work-related injury. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mr. Garcia filed a Disputed Claim for Compensation on November 8, 2013, against his employer, Rouses Enterprises, Inc. (Rouses), and its insurer, Strategic Comp, claiming he suffered a work-related injury on September 15, 2013, and that Rouses had paid neither wage benefits nor authorized any medical treatment. A | ¡¡trial was set for July 24, 2014. Mr. Garcia failed to appear at trial. On that date, in open court, the parties agreed to submit the matter to the trial court via agreed upon stipulations, the claimant’s deposition testimony, and both claimant’s and employer’s exhibits. The parties filed post-trial briefs thereafter. On October 16, 2014, the workers’ compensation judge rendered judgment. The workers’ compensation court found that Mr. Garcia failed to meet his burden of proving an on-the-job accident and, therefore, was entitled to no benefits pursuant to the Louisiana Workers’ Compensation Act. The court entered no written reasons for judgment. This timely appeal followed.
The submitted evidence revealed that Mr. Garcia was hired by Rouses as an overnight stock clerk on September 6, 2013. Rouses is a grocery store and Mr. Garcia’s job entailed moving boxes of merchandise from pallets in the warehouse to a rolling cart and then restocking the store shelves. According to his claim, Mr. Garcia was moving a box on September 15, 2013, when he felt an immediate pain around his waist and right thigh toward the groin region that gravitated to his lower back. Except for Mr. Garcia, the incident was unwitnessed. Mr. Garcia did not report the incident to either the store manager or any other supervisor. Rouses’ standing policy regarding on-the-job acci *1159 dents requires an employee to report an accident immediately to the person in charge' of the store. This policy is outlined in the Employee Handbook, a copy of which was provided to Mr. Garcia during his orientation. However, according to his deposition testimony, Mr. Garcia was concerned that he might lose his job if he told anyone he was hurt. He instead proceeded to go back to work for approximately 15-30 minutes but, according to him, the pain was too great to continue. As an excuse to leave, Mr. Garcia told his supervisor that “something popped up at home” and that he needed to leave to take care of the situation.
| ¿Mr. Garcia believed that “maybe [he] could just go home and ... rest it off and [he] would heal.” Though the parties dispute whether he was scheduled to work, Mr. Garcia did not come into work on the day after the alleged accident. Mr. Garcia did, however, speak with his supervisor on the phone in the days that followed but, again, did not during any of these conversations notify his supervisor that he had an on-the-job accident. Rather, according to Mr. Garcia, he was told he was not scheduled to work again until September 21st, and he believed that would be enough time to heal. However, according to his claim, Mr. Garcia’s pain, worsened each day. Mr. Garcia testified that'on the day before his next scheduled shift “he couldn’t take the pain” and was intending to go to the emergency room but instead decided to consult an attorney for advice. His attorney then referred him to Dr. Michael Haydel, D.C., with the Medical Rehab Accident Injury Center for medical treatment.
On September 28, 2014, Mr. Garcia saw chiropractor Dr. Haydel. His chief complaints to Dr. Haydel included low back pain, right hip/leg pain, lower extremity parasthesias, muscle spasms, and restricted range of motion. Dr. Haydel noted that Mr. Garcia’s condition was consistent with lumbar disc displacement without myelopathy with associated radiculitis, lumbar sprain/strain with segmental dysfunction and lumbago. In his initial medical evaluation of Mr. Garcia, Dr. Haydel opined that Mr. Garcia could not currently perform his work responsibilities as a stock clerk without risk of re-injury or exacerbation of symptoms and that his suggested treatment plan was reasonable and medically necessary. In addition, he referred Mr. Garcia to Dr. S. Elliot Green-burg, M.D., for medication management.
On September 24, 2013, Mr. Garcia saw Dr. Greenburg for pain management. Dr. Greenburg noted that Mr. Garcia had limited range of motion in 15his lumbar spine with moderate bilateral paraspinal muscle pain, with tenderness in his upper right anterior thigh, and spasm over the lumbar vertebral distribution. Dr. Greenburg’s impression was that Mr. Garcia was manifesting a lumbar spinal strain/sprain. and right thigh strain. He prescribed Mr. Garcia Tramadol and recommended that he continue with Dr. Haydel’s rehabilitative treatment plan.
Mr. Garcia failed to notify Rouses before he sought medical treatment. After his consults with his doctors, Mr. Garcia returned to Rouses for the first time after he alleged he was injured and completed an accident report on September 24, 2013. Further, Mr. Garcia failed to send Rouses his choice of physician form electing Rr. Haydel until October 22, 2013.
In addition, the submitted evidence reveals that prior to beginning his job at Rouses Mr. Garcia sustained neck and back injuries that he did not disclose to his employer. During his application process with Rouses, Mr. Garcia was asked to complete a medical history questionnaire. His submitted answers denied any prior cervical and/or lumbar spine problems. How *1160 ever, the record reflects that Mr. Garcia sustained these injuries in a motor vehicle accident that occurred approximately one and a half years before he was hired by Rouses.

LAW & ANALYSIS

On appeal Mr. Garcia raises one assignment of error: The trial court erred in concluding that he failed to establish the occurrence of an on-the-job accident.
An employee seeking workers’ compensation benefits must prove “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031(A). The Louisiana Workers’ Compensation Act defines an accident as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual | ^deterioration or progressive degeneration.” La. R.S. 23:1021(1). Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an “accident” within the meaning of La. R.S. 23:1021(1). Perrilloux v. Uniforms by Kagan, Inc., 13-377 (La.App. 5 Cir. 12/27/13), 131 So.3d 1026, 1031.
The employee in a workers’ compensation action has the burden of proving a work-related accident by a preponderance of the evidence. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.7/2/12), 93 So.3d 1253, 1257. An employed may prove that an unwitnessed accident occurred in the course and scope of his employment by his testimony alone if the employee can prove (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Id. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Ardoin v. Firestone Polymers, L.L.C., 10-0245 (La.1/19/11), 56 So.3d 215, 219.
In determining whether a worker has discharged his burden of proof, the fact-finder “should accept as true a witness’s uneontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony.” Marange, 93 So.3d at 1257. The fact-finder’s determination as to whether the worker’s testimony is credible and whether the worker has discharged his burden of proof are factual determinations that should not be disturbed on appellate review, unless clearly wrong or manifestly erroneous. Marange, 93 So.3d at 1257-58. If the trial court’s findings are reasonable in light of the entirety |7of the record, the appellate court may not reverse. Pemlloux, 131 So.3d at 1032. Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Id.
Upon review of the record, we find no manifest error in the trial court’s conclusion that Mr. Garcia failed to prove he sustained a work-related injury. As discussed above, a claimant can meet his burden of proving a work-related accident by his own uncontradicted testimony “absent circumstances casting suspicion on the reliability of this testimony.” Marange, 93 So.3d at 1257. In this case, where the claimant failed to report the incident to his employer for several days and did so only after he had seen an attorney who referred him to a medical rehab accident injury center, and where the claimant was not *1161 forthcoming with his employer that he had a previous injury, there are circumstances that cast suspicion on the reliability of Mr. Garcia’s testimony. Accordingly, we find no manifest error in the trial court’s conclusion that Mr. Garcia failed to prove he sustained a work-related injury.

DECREE

For the foregoing reasons, the workers’ compensation court’s judgment denying claimant workers’ compensation benefits is affirmed.

AFFIRMED