CHEHARDY, C.J.
Defendants, Rent-A-Center and its insurer, Hartford Insurance (collectively "RAC"), appeal a judgment of the Office of Workers' Compensation ("OWC") finding that the plaintiff, Shanda Bailey, was in the course and scope of her employment with RAC when she injured her neck and back, and that the injuries she sustained were such that she was entitled to temporary total disability benefits, supplemental earnings benefits, past and future medical expenses, and penalties and attorney fees. Ms. Bailey answered the appeal seeking additional attorney fees incurred by her counsel for having to oppose the appeal. For the reasons that follow, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
In August of 2017, Ms. Bailey was employed by RAC as a Customer Account Representative. Her job duties included interacting with customers, making customer phone calls, loading and unloading delivery trucks, delivering and picking up rental merchandise, installing merchandise, and keeping company vehicles clean and properly maintained.
On August 14, 2017, while assisting a co-worker in moving a washing machine, Ms. Bailey experienced a "slight sprain" in her back. Ms. Bailey did not consider the back *801 sprain to be anything serious or even an "injury" as she was able to resume working that day and complete the delivery. Consequently, Ms. Bailey did not report the incident or seek medical attention at that time.
Two days later on August 16, 2017, Ms. Bailey was tasked with loading a full-size mattress and box spring into the back of the company van on her own. While she was able to successfully load the box spring into the van, she experienced difficulty in loading the mattress on her own. According to Ms. Bailey, she made two requests for assistance from her supervisor, Tammy Johnson, to no avail. After several failed attempts to successfully maneuver the mattress into the van, Ms. Bailey tried to lift the mattress over her head to guide it into the van and, in the process of doing so, she immediately felt pain in her neck and the top of her back. The accident was unwitnessed.
Ms. Bailey, a type I diabetic who requires an insulin pump, became light-headed and dizzy. She felt the immediate onset of a headache. Concerned that she might pass out or suffer an insulin reaction, Ms. Bailey went into the store to check her blood sugar. She advised her supervisor, Ms. Johnson, that she was "in pain," that her blood sugar was low, and that she was leaving the store in order to seek medical assistance. Ms. Bailey then left RAC with the intent of proceeding to the closest Urgent Care, but due to her dizziness, pain, and inability to transport herself beyond the Walmart parking lot located around the corner, she called her daughter to drive her to Ochsner Kenner Medical Center.
Ms. Bailey presented to the emergency room at Ochsner complaining of "thoracic back discomfort." The emergency room records reflect that Ms. Bailey mentioned the discomfort she had experienced in her back while moving the washing machine at work two days prior, and reported that she had experienced a second work-related injury to her upper back earlier in the day on August 16, 2017, while lifting mattresses. Ms. Bailey denied any prior history of neck or back problems or any physical restrictions at the time of the accident. X-rays of her thoracic spine were taken, and Ms. Bailey was given Toradol and Norflex injections. She was diagnosed with muscle "strain, sprain, [and] spasm," instructed to follow-up with her primary care physician, and was provided a work excuse.
After her initial emergency room visit to Ochsner Kenner, Ms. Bailey reported the incident to her store manager at RAC, Jorge Idiaquez. Though Mr. Idiaquez denied at trial that Ms. Bailey had ever reported the incident to him or that her injury was work related, the Workers' Compensation - First Report of Injury indicates otherwise. According to the report, Mr. Idiaquez notified Rent-A-Center's carrier of the incident on August 18, 2017. Specifically, Mr. Idiaquez reported that Ms. Bailey had reported that she was involved in an accident occurring at work on August 16, 2017, while she was "dragging a mattress." Mr. Idiaquez further reported that Ms. Bailey "stated that she was going to the doctor for her blood glucose. [Ms. Bailey] did not mention about a work related injury until later on that day. [Ms. Bailey] stated that she was trying to grab a full size mattress." Moreover, Tammy Johnson testified by deposition that Mr. Idiaquez mentioned to her several days after the accident (but within the same week) that Ms. Bailey had left the store on August 16, 2017 because she had hurt herself.
After having undergone emergency medical treatment, and after having reported the incident to Mr. Idiaquez, Ms. Bailey testified that she provided RAC
*802 with the work excuse she received from Ochsner, which was dated August 16, 2017 and restricted her from work. This document-which was provided by RAC to plaintiff's counsel in response to a request for production of documents seeking all work slips RAC had in its possession-in addition to the First Report of Injury corroborate Ms. Bailey's contention that RAC was aware that she was injured while in the course and scope of her employment and was restricted from work.[1]
On August 17, 2017, the day following her accident, Ms. Bailey followed up with her primary care physician, Dr. Sudha Mardia, complaining of neck and back pain as a result of lifting a mattress at work. At this visit, Dr. Mardia diagnosed Ms. Bailey with "cervicaligia" and low back pain. Ms. Bailey was provided a "no work" slip, which was later presented to RAC. Ms. Bailey returned to Dr. Mardia on August 21, 2017 with continued complaints of neck and back pain due to her injury and was again restricted from work. When Ms. Bailey presented to Dr. Mardia on August 25, 2017 with ongoing complaints of pain in her neck and back, Dr. Mardia referred her for physical therapy. Ms. Bailey returned to the emergency room at Ochsner Kenner on August 24, 2017, where she complained of and was treated for ongoing thoracic back pain stemming from the accident she sustained at RAC on August 16, 2017.
Ms. Bailey attempted to return to work on August 31, 2017. After remaining at the store for approximately an hour and a half on that day, she left work in order to attend a doctor's appointment with her initial physician of choice, Dr. Dennis Gruwell. At trial, Mr. Idiaquez denied that Ms. Bailey had advised him that she was leaving work to attend a doctor's appointment, but rather he testified that she exhibited no signs of pain that day, appeared frustrated and agitated, and abruptly departed the store stating that she "just was not going to do it."
Dr. Gruwell's records confirm that Ms. Bailey appeared for a scheduled appointment on August 31, 2017 complaining of pain in her upper back, neck and shoulders as a result of "trying to lift a mattress into a van at work." Dr. Gruwell diagnosed Ms. Bailey with cervical and thoracic strains, which he related to the August 16, 2017 work-related accident. Ms. Bailey did not return to work that day because Dr. Gruwell restricted her from work in any capacity at that time. Dr. Gruwell continued to treat Ms. Bailey through January 25, 2018, at which time he stated that "[t]he patient is unable to work in any capacity at this time." Dr. Gruwell's treatment consisted of physical examinations during monthly office visits and various treatment modalities several times per week, including electric stimulation, hot/cold compress treatment, and therapeutic exercises. On occasion massage was attempted but Ms. Bailey generally could not tolerate massage. As of the last work status report prepared by Dr. Gruwell on January 25, 2018, he had Ms. Bailey restricted from work. Further, Dr. Gruwell's records indicate that on February 6, 2018, he recommended that Ms. Bailey be evaluated by a neurosurgeon and indicated that epidural steroid injections may be appropriate. Though Dr. Gruwell's office continuously submitted the requisite 1010 forms to Rent-A-Center's insurer for approval of treatment, these were denied.
Ms. Bailey presented to Dr. Scott Buhler, her choice of orthopedist, on September *803 13, 2017 for an authorized initial evaluation. Ms. Bailey gave a history of having experienced pain in her neck and back immediately after having lifted a mattress at work on August 16, 2017. Ms. Bailey complained of pain in her thoracic and cervical spine with shooting pains into her left leg and, on exam, she showed a limited range of motion. Dr. Buhler diagnosed Ms. Bailey with having sustained a strain of the musculature in her thoracic spine, cervical spine, and possibly lumbar spine, and he opined that these injuries were consistent with her lifting accident at work on August 16, 2017. Dr. Buhler recommended that Ms. Bailey undergo a more formal physical therapy exercise program in addition to the hot/cold packs, electrical stimulation and massage she had been receiving. At this initial evaluation, Dr. Buhler restricted Ms. Bailey from work "until further notice."
Dr. Buhler testified by deposition that his review of Ms. Bailey's Ochsner Kenner emergency room records correlated to the history she gave to him regarding how and when the work-related accident occurred, the upper thoracic pain she described, and the limited range of motion on exam, all of which were consistent with a lifting injury. On January 11, 2018, Ms. Bailey underwent a thoracic MRI, which revealed mild abnormalities at the T7-8 and T8-9 levels, including small posterior disc protrusions without any significant spinal cord abnormality or compression. According to Dr. Buhler, these findings were in the area of the spine where Ms. Bailey was complaining of pain from the accident. Consequently, he opined that her lifting accident at work could have caused these symptoms. Further, Dr. Buhler agreed with Dr. Gruwell's restrictions for Ms. Bailey from work activities, "until further notice." However, Ms. Bailey did not return to Dr. Buhler because RAC did not authorize additional treatment. At the time of his deposition taken on July 11, 2018, Dr. Buhler opined that Ms. Bailey is now likely capable of engaging in "some form of light duty" work. Lastly, Dr. Buhler related Ms. Bailey's injuries to the accident she sustained on August 16, 2017 while lifting the mattress at work.
On April 18, 2018, at the request of RAC, Ms. Bailey underwent a second medical opinion (SMO) by orthopedic surgeon, Dr. Kevin Watson. While Dr. Watson conceded the possibility that Ms. Bailey could have sustained a muscle strain of her thoracic spine from lifting at work, he ultimately determined that the "inconsistent complaints" he noted in his review of her medical records and what he referred to as the "nonorganic" signs of pain, "call[ed] in[to] question the validity of her subjective complaints." Moreover, Dr. Watson opined that Ms. Bailey's complaints of pain were possibly non-physiological in nature and could be attributable to her "stress, job dissatisfaction, [and the] Workers' Compensation litigation." Additionally, Dr. Watson discounted the findings on the MRI as being caused by trauma or other injury, but rather, determined the "minimal disc protrusions" observed were more likely consistent with the degenerative process as they are often seen in asymptomatic patients. Based upon his examination of Ms. Bailey and his review of her medical records, Dr. Watson found "no objective evidence of injury to her neck or back" and concluded that she sustained no objective injury as a result of her work at RAC.
While under Dr. Gruwell's care, Ms. Bailey filed a Form 1008, Disputed Claim for Compensation, which was received by the Office of Workers' Compensation on September 6, 2017. Ms. Bailey alleged that no medical or indemnity benefits were paid by RAC and that no medical treatment was authorized as a result of her work-related *804 accident. RAC answered the Form 1008 on October 20, 2017 denying that Ms. Bailey suffered an accident on August 16, 2017 in the course and scope of her employment.
Following a trial, the OWC took the matter under advisement. Thereafter, on August 20, 2018, the OWC issued a judgment, in which it ruled the following: Ms. Bailey is entitled to temporary total disability benefits of $ 300.00 per week, retroactive to August 16, 2017, through January 25, 2018, for a total of $ 6,900.00, together with legal interest; RAC is ordered to pay Ms. Bailey supplemental earnings benefits in the amount of $ 300.00 per week, retroactive to January 25, 2018 through the date of judgment, together with legal interest, and to continue to pay supplemental earnings benefits to Ms. Bailey until such time as a modification is appropriate; RAC is ordered to pay medical expenses, subject to any reductions allowed by the Louisiana Workers' Compensation Fee Schedule, in the following amounts: $ 3,832.00 to Dr. Dennis Gruwell; $ 2,804.99 to Ochsner Kenner Medical Center; $ 650.00 to Magnolia Diagnostics; and, any Medicaid lien owed to St. Charles Community Health Center; RAC is ordered to approve and pay for Ms. Bailey's ongoing treatment with Dr. Scott Buhler; and, pursuant to La. R.S. 23:1201(I), RAC is ordered to pay $ 8,000.00 in penalties to Ms. Bailey, and $ 15,000.00 in attorney fees to her attorney.
RAC appeals this judgment.
ASSIGNMENTS OF ERROR
On appeal, RAC submits four assignments of error: (1) the OWC erred in determining that Ms. Bailey established an unwitnessed work-related accident occurred on August 16, 2017; (2) the OWC erred in finding that Ms. Bailey carried her burden of proving disability and causation; (3) the OWC erred in determining Ms. Bailey established her entitlement to workers' compensation benefits; and (4) the OWC erred in awarding Ms. Bailey penalties and attorney fees. Ms. Bailey answered the appeal, seeking appellate attorney fees and costs of the appeal.
STANDARD OF REVIEW
It is well-settled that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Winford v. Conerly Corp. , 04-1278 (La. 3/11/05), 897 So.2d 560, 569. In applying the manifest error standard, the appellate court must determine not whether the fact finder was right or wrong, but whether the fact finder's conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc. , 96-2840 (La. 7/1/97), 696 So.2d 551, 556. Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Galiano v. Lucky Coin Machine Company , 15-2065 (La. 1/8/16), 184 So.3d 689. Moreover, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. Similarly, "[i]f the [fact finder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co. , 558 So.2d 1106, 1112 (La. 1990). Accordingly, if the evidence in the record on appeal supports the factual determinations of the trier of fact, we are required to affirm the findings.
DISCUSSION
An employee seeking workers' compensation benefits must prove "personal *805 injury by accident arising out of and in the course of his employment." La. R.S. 23:1031(A). An "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an "accident" within the meaning of La. R.S. 23:1021(1). Garcia v. Rouses Enter. , 15-0007 (La. App. 5 Cir. 5/14/15), 170 So.3d 1157, 1160.
The employee in a workers' compensation action has the burden of proving a work-related accident by a preponderance of the evidence. Garcia, supra. An employee may prove that an unwitnessed accident occurred in the course and scope of his employment by his testimony alone if the employee can prove (1) no other evidence discredits or casts serious doubt upon the employee's version of the incident; and (2) the employee's testimony is corroborated by the circumstances following the alleged incident. Id. Corroboration of the employee's testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Id.
In determining whether an employee has discharged his burden of proof, the fact-finder "should accept as true a witness' uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony." Garcia, supra. The fact-finder's determination as to whether the employee's testimony is credible and whether the employee has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. Id. If the lower court's findings are reasonable in light of the entirety of the record, the appellate court may not reverse. Id. Consequently, when there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous. Id.
In this case, Ms. Bailey testified that she experienced pain in her upper back and shoulder area immediately after attempting to lift a mattress at work. While the various medical records differ somewhat regarding their respective descriptions of the exact area of Ms. Bailey's pain-i.e. , whether it was her upper back, her neck area, in between her shoulders, or mid back-the medical records consistently substantiate that Ms. Bailey sustained an injury that occurred at work while moving a mattress, and that the injury was to her thoracic spine. The medical testimony and records further corroborate that Ms. Bailey's complaint of pain in her thoracic spine was consistent with her description of how the accident occurred-lifting a mattress. Although testimony was offered by RAC to suggest that Ms. Bailey did not attempt to lift a mattress and that she did not report a work-related accident, as the fact-finder, the OWC was permitted to accept Ms. Bailey's version of events and reject that of Mr. Idiaquez and Ms. Johnson. Additionally, Ms. Bailey's version is corroborated by the medical evidence and the testimony of Dr. Buhler. Our review of the testimony and evidence presented at the hearing convinces us that the purported discrepancies upon which RAC relied to deny Ms. Bailey's claim are minor and do not cast serious doubt upon or *806 seriously challenge the credibility of her version of the incident. Therefore, in view of the record before us, we cannot find that the OWC manifestly erred in concluding that Ms. Bailey sustained a work-related injury by accident on August 16, 2017. RAC's first and second assignments of error are without merit.
In RAC's third assignment of error, it argues that the OWC erred in holding Ms. Bailey was entitled to workers' compensation benefits. As we found above, Ms. Bailey proved her disability stems from the injury she sustained on August 16, 2017. Because this disability continued for more than two weeks, she is entitled to benefits from the date of her injury. See La. R.S. 23:1224. This assignment of error is also without merit.
In its final assignment of error, RAC argues the OWC erred in assessing penalties and attorney fees under La. R.S. 23:1201(I). Penalties and attorney fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc. , 98-2271 (La. 6/29/99), 737 So.2d 41, 46. Whether penalties and attorney fees are warranted is a factual determination, which will not be disturbed in the absence of manifest error. Williams v. Rowe-Treaudo , 11-0046 (La. App. 5 Cir. 9/27/11), 75 So.3d 502, 508.
Under La. R.S. 23:1201(I), when an employer fails to pay workers' compensation benefits, penalties and attorney fees shall be assessed if the employer did not reasonably controvert the claim. Redmann v. Bridgefield Cas. Ins. Co. , 11-651 (La. App. 5 Cir. 2012), 88 So.3d 1087, 1096, writ denied , 12-710 (La. 5/18/12), 89 So.3d 1192. A claim is "reasonably controverted" if the employer has some valid reason or evidence upon which to base its denial of benefits. Id. To determine whether a claimant's right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time the employer refused to pay the benefits allegedly owed. Rowe-Treaudo, supra. Penalties and attorney fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. J.E. Merit Constructors, Inc. v. Hickman , 00-943 (La. 1/17/01), 776 So.2d 435, 438.
In this case, the First Report of Injury reported by Mr. Idiaquez to RAC's carrier documents that Ms. Bailey reported her injury to him on the date of the accident, August 16, 2017. Although Mr. Idiaquez attempted to deny that Ms. Bailey ever reported her injuries to anyone at RAC as work-related, under cross-examination he conceded that when he reported the incident to RAC's carrier on August 18, 2017, he did know that Ms. Bailey was alleging she had sustained a back injury on the job. Prior to her termination from RAC, Ms. Bailey consistently presented work excuses or "no work" slips from her medical providers to RAC. At trial, RAC failed to show that it possessed information that reasonably contravened the factual and medical information presented to it by Ms. Bailey from the date of her work-related accident. Moreover, while Mr. Idiaquez testified that after Ms. Bailey was released to return to light-duty, she was offered light-duty work and denied it, Mr. Idiaquez could not state whether he made a phone call or actually spoke to Ms. Bailey in person to inform her of the light-duty *807 work offer nor could he state the date of the alleged offer. Ms. Bailey denied that she was ever offered light-duty work in this case. In view of the foregoing, and upon our review of the record, we cannot find that the OWC manifestly erred in concluding that RAC failed to reasonably controvert Ms. Bailey's claim for workers' compensation benefits and, thus, that penalties and attorney fees were warranted in this case. This assignment of error lacks merit.
Ms. Bailey answered this appeal pursuant to La. C.C.P. art. 2133 seeking additional attorney fees incurred by counsel in opposing RAC's appeal. A workers' compensation claimant who timely answers the appeal is entitled to increased attorney fees to reflect additional time incurred in defending against an employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim. Hamilton v. Compass Group USA/Morrison , 07-501 (La. App. 5 Cir. 11/27/07), 973 So.2d 803, 809. Because our decision in this case denies RAC relief, we grant Ms. Bailey's request and award counsel for Ms. Bailey $ 2,500.00 in attorney fees for the defense of this appeal.
DECREE
For the foregoing reasons, we affirm the judgment of the Office of Workers' Compensation finding that Shanda Bailey suffered an accident and injury in the course and scope of her employment on August 16, 2017, entitling her to workers' compensation benefits as set forth in the judgment. We also affirm the judgment ordering Rent-A-Center to pay medical expenses and ordering Rent-A-Center to approve and pay for Ms. Bailey's ongoing treatment with Dr. Scott Buhler. We further affirm the judgment awarding penalties against Rent-A-Center and Hartford in the amount of $ 8,000.00, and the award of attorney fees. We grant Ms. Bailey's request for attorney fees on appeal in the amount of $ 2,500.00 and assess costs of this appeal against Rent-A-Center.
AFFIRMED.

This work slip, in addition to several others obtained by Ms. Bailey during the course of her treatment, was produced by RAC in discovery. All of the work slips were introduced into evidence at trial and are contained in the appellate record.