ROBERT A. CHAISSON, Judge.
1 gThis is an appeal by Louisiana Workers’ Compensation Corporation (LWCC) and Popeye’s Diversified Foods and Seasonings, Inc., from a judgment awarding Arron J. Liggio workers’ compensation benefits. For the following reasons, we amend the judgment to eliminate the awards for penalties, attorney fees, and future medical expenses. In all other respects, the judgment is affirmed.
FACTS AND PROCEDURAL HISTORY
Arron Liggio was hired in late 2007 by Popeye’s Diversified Foods and Seasonings, Inc., to work as a welder and fabricator in a division of the company involved in the building and operation of racing boats. The job required heavy lifting on occasions, as well as frequent bending and stooping. Mr. Liggio claimed to have been injured on December 20, 2009, when the boat on which he was working was being moved by trailer. Specifically, he claims that while inserting bilge plugs in the transom of the boat, he was struck on his back by the boat rudder and knocked to the ground, falling on his shoulder. No one else witnessed the accident.
|oMr. Liggio testified that he did not immediately inform his supervisor, Scott Barnhardt, of the incident, but did do so after a lunch break. Mr. Barnhardt testified that he was never told of the accident. However, Daniel Suazo, a co-worker, testified that he heard Mr. Liggio tell Mr. Barnhardt that he was struck by the rudder. Mr. Liggio’s wife testified that she saw bruises on his back when he returned home later in the day.
Mr. Liggio continued working at the job until January 28, 2010. He was fired at that time for allegedly failing to report to work. He received unemployment compensation beginning on March 1, 2010, and was still receiving these benefits at the time of trial.
Mr. Liggio first sought medical treatment for his alleged injury on April 16, 2010, after consulting counsel. On that date, he was seen at the Louisiana Primary Care Consultants office by Dr. Ash-faq Qureshi. A report of this visit, signed by Dr. Norman Ott, the director of the facility, states the clinical impression as lumbar and left buttock trauma from the rudder, with pain radiating into the right leg. The report also notes left shoulder and upper back and neck pain and strain, due to a forward slip-and-fall on the left shoulder. After a second visit on May 21, 2010, the impression was “headaches twice a week, cervical strain, lumbar strain, left shoulder symptoms-essentially all the same,” with tingling of an unknown origin. An MRI was recommended.
The MRI was performed six months later, on December 21, 2010, at the East Jefferson Imaging Center at Dr. Ott’s request. Dr. Daniel Johnson, Jr. interpreted the results as a “subtle central posterior herniation of the L4-5 disc.” On January 17, 2011, Mr. Liggio was seen at the office of Dr. Allen Johnson by Dr. Johnson’s physician’s assistant, Paul Piccione. The impression of that visit was chronic neck pain and chronic back pain with L4-5 herniation. After a second Lvisit to that office on February 23, 2011, Dr. Johnson gave an April 18, 2011, opinion as follows: “[biased on his history, physical findings and the mechanism of injury, it is my opinion that the herniated lumbar disc by MRI dated *394 12/21/2010 is more probably than not related to the work injury of December 20, 2009.” As to work restrictions, Dr. Johnson said he “would limit him to light duty, avoid repetitive bending or twisting at the waist, carrying more than 20 pounds, [and] prolonged sitting or standing without changing positions [every 25 to 30 minutes].”
The defendants requested an independent medical examination. Dr. Andrew Todd, a spinal surgeon, examined Mr. Lig-gio on April 18, 2011, and reviewed all of his records, including the December 20, 2010 MRI. His opinion as to the MRI was that, although it showed a slight bulge, it did not indicate herniation, but rather only a minor irregularity which would not be unusual for someone of Mr. Liggio’s age. His extensive physical examination revealed no objective evidence of any problems and was considered to be normal. Dr. Todd did not find any objective evidence of problems which would warrant placing limitations on Mr. Liggio’s activities. He further noted that if the complaints of pain were legitimate, some restrictions on lifting and bending might be in order; but, he would not consider such restrictions over the long term. As to causation, he said that it would have been necessary to have had an MRI prior to the accident to compare to the one done after the accident, to see if they differed. Otherwise, he could not say what effect the accident might have had.
Based on the above evidence and testimony, the Office of Workers’ Compensation (OWC) judge initially ruled that although there had been an accident on December 20, 2009, Mr. Liggio failed to prove that his subsequently diagnosed problems were causally related to the accident. She therefore denied benefits. Mr. Liggio filed a motion for a new trial, which was granted solely for |sre-argument. After re-argument, the judge reversed herself, found that the injuries were causally related to the accident, and awarded benefits. She ordered payment of Supplemental Earnings Benefits (SEB) for all times when claimant was not receiving unemployment benefits, as well as all medical expenses related to the injury. She further found that defendants had not reasonably controverted the claim and awarded $8,000 in penalties and $8,000 in attorney fees. This appeal followed.
LAW AND ANALYSIS
The defendants’ first four assignments of error all raise the issue of whether Mr. Liggio proved the occurrence of an accident with compensable injuries. In workers’ compensation cases, as in all other cases, the standard of review of factual matters is manifest error. In Woodruvi v. Olive Garden Restaurant, 99-130 (La.App. 5 Cir. 5/19/99), 735 So.2d 911, this court further explained that even though the appellate court believes that had it been sitting as the trier of fact it would have made different findings, as long as the findings of the actual trier of fact are based upon reasonable credibility determinations and reasonable inferences of fact, such findings may not be set aside on appeal.
Here, the OWC judge apparently found Mr. Liggio’s version of the accident credible. The fact that Mr. Liggio’s wife saw bruises on his back the afternoon of the incident corroborated that he was struck by something. There was further corroboration in the testimony of Mr. Sua-zo, who said that he heard Mr. Liggio report the accident to Mr. Barnhardt on the day it allegedly happened. Although Mr. Barnhardt denied that this conversation took place, the OWS judge found otherwise. These are clearly reasonable *395 credibility determinations, and as such they may not be set aside.
|fiThere is similarly conflicting evidence as to whether any injury immediately resulted from the accident. Mr. Liggio testified that he had no pains in his back before the accident, but did afterward. He further testified that he did not go to a doctor immediately or shortly after the accident because of financial constraints and because he was afraid it might jeopardize his job. He said that this latter apprehension arose because when he told Mr. Barnhardt about the accident, Mr. Barnhardt said “welcome to the boat business,” and that he had to “suck it up.” The defendants put on evidence to show that Mr. Liggio’s medical insurance would have paid for any medical treatments, except for a small co-payment. They also showed that numerous employees of Popeyes, including some from the boat operation, had been treated for work-related injuries and had made compensation claims without any negative repercussions from the company, and therefore there were no grounds for Mr. Liggio’s fears. Again, the trier of fact apparently believed that Mr. Liggio’s fears, although subjective, were sufficient reasons to justify his not immediately seeking medical treatment. She further found that Mr. Liggio was injured when the boat rudder struck him. We find no manifest error in this finding.
The medical evidence was equally contradictory. Dr. Qureshi found problems in the back, neck and shoulder areas during the first visit of April 16, 2010. He also restricted Mr. Liggio from activities involving lifting over 25 pounds. An MRI of December 21, 2010, was interpreted as showing a herniated disc at the L4-5 level. Dr. Johnson was of the opinion that the herniation was the result of the December 20, 2009, accident. He thought that work restriction to light duty was in order. Dr. Todd, on the other hand, was not convinced that there was a herniated disc. He further stated that it would be impossible to determine whether the accident caused the problem without having access to an MRI from before the incident, so that the two test results could be compared. He saw no real need for |7work restrictions, except perhaps on a temporary basis. Again, resolution of these issues depended on credibility determinations. A decision to credit Mr. Liggio’s doctors, rather than the defendants’ doctor, was a reasonable one, and we are thus precluded from setting aside these findings.
Defendants next contend that it was manifest error to find that they had not reasonably controverted the claim for benefits and thus the imposition of penalties and attorney fees has no proper basis. In Brown v. Texas-La Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890, the supreme court stated that:
In general, one can surmise from the plain meaning of the words making up the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Here, the issue is whether the defendants possessed factual and medical infor *396 mation to reasonably counter the information presented by Mr. Liggio. As the synopsis of the evidence above shows, Mr. Liggio’s version of whether he reported the accident was contradicted by the testimony of Mr. Barnhardt, his supervisor. There is no question that Mr. Liggio did not seek medical attention until several months later, after he had been fired from the job. The medical reports generated in March and April of 2010, were based only on Mr. Liggio’s representations of his symptoms. It was not until December 2010 that an MRI was interpreted as showing a herniated disc, thus providing objective evidence of an injury. Yet even that interpretation was disputed by the opinion of Dr. Todd, and this latter expert did not believe that Mr. Liggio showed objective evidence of an injury.
|sIt must further be noted that the OWC judge first ruled that Mr. Liggio had failed to show any injury which could be attributable causally to the alleged accident of December 20, 2009. In this view, then, the defendants must necessarily have shown that there was a reasonable and nonfrivo-lous legal dispute as to the claim because they prevailed. On rehearing, only for purposes of argument, the judge reversed her position and ruled in Mr. Liggio’s favor. That reversal did not, in this court’s opinion, support a finding that the defendants’ dispute of the claim was unreasonable. After a thorough review of the entire record, it is our opinion that the OWC judge was manifestly erroneous in finding that the claim was not reasonably controverted. We therefore set aside the awards of penalties and attorney fees.
The next assignment of error concerns the interpretation of the portion of the judgment awarding medical expenses. Defendants correctly point out that to the extent that the judgment includes future medical expenses, it is in error because in the workers’ compensation context medical expenses come due only as they arise. Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985). Mr. Liggio does not dispute this assertion. Therefore, we vacate that portion of the judgment that awards future medical expenses, recognizing that Mr. Liggio retains the right to claim such expenses as they arise.
The final question is whether a video re-enactment of the incident proffered by the defendants should have been admitted into evidence. In excluding the evidence, the OWC judge noted that the video was not made by anyone who had witnessed the accident and was not made by an expert in accident reconstruction. She therefore found that it was mere speculation on the defendants’ part as to what had actually happened.
19Trial judges are given wide discretion in ruling on the admissibility of evidence, and those determinations will not be disturbed absent a clear showing of abuse of that discretion which has prejudiced substantial rights of a party. Terrebonne v. Goodman Mfg. Corp., 96-450 (La. App. 5 Cir. 12/30/96), 687 So.2d 124. We find no abuse of discretion in the decision to exclude the video, and neither do we see any substantial rights of defendants which might have been affected thereby. There were photographs of the boat and trailer introduced, as well as aerial photographs of the scene. The video would not have contributed to a clearer understanding of the accident even had it been produced by a reconstruction expert. In this circumstance, we decline to hold that it was an abuse of discretion to prohibit introduction of the video.
CONCLUSION
For the foregoing reasons, the awards of attorney fees and penalties, and the award *397 of future medical expenses, are set aside. In all other respects, the judgment is affirmed.

AFFIRMED IN PART; REVERSED IN PART