CRAIG BURKETT

VERSUS

JEFFERSON PARISH FIRE DEPARTMENT

NO. 24-CA-335

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION
DISTRICT 7
STATE OF LOUISIANA
NO. 21-6759
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

January 29, 2025

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Timothy S. Marcel

<u>**AFFIRMED**</u>
 **SMC**
 **JGG**
 **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CRAIG BURKETT
    William R. Mustian, III

COUNSEL FOR DEFENDANT/APPELLEE,
JEFFERSON PARISH FIRE DEPARTMENT
    Michael F. Nolan, Jr.

**CHEHARDY, C.J.**

Plaintiff-appellant, Craig Burkett, appeals the Office of Workers' Compensation hearing officer's judgment that denied his claim for workers' compensation benefits. For the reasons that follow, we affirm the judgment.

*Facts and Procedural History*

Captain Craig Burkett has been a Jefferson Parish firefighter since 1995. When the COVID pandemic began in 2020, doctors advised him to remain at home for the safety of his two children who suffer from Bruck Syndrome, a rare genetic disease that makes them susceptible to illness. The Department granted Capt. Burkett leave to stay home beginning in April 2020, and he remained on leave until July 2021.[1]

Capt. Burkett testified that his time at home caused him to focus on certain traumatic incidents that occurred while he was a firefighter, including the recovery of a baby who had drowned in a canal. He experienced anxiety and stated that he was having trouble sleeping at night. He also experienced depression and would avoid driving near locations where certain work-related traumatic incidents had occurred. In March of 2021, Capt. Burkett contacted the Louisiana Trauma Network to find treatment. He testified that it took several weeks for him to find a psychiatrist, and several more weeks before he could be seen by Dr. John Macgregor.

On July 20, 2021, the fire department sent Capt. Burkett a letter indicating that they have arranged a safe, environmentally friendly work environment for him, and thus he needed to return to work. On July 22, 2021, Capt. Burkett had his first telephone session with Dr. Macgregor. Also on that day, Capt. Burkett called

---

[1] Capt. Burkett explained that he originally had COVID leave, then began using his accumulated sick leave after the Governor lifted the order for COVID leave. He stated that firefighters also are entitled to 52 weeks of annual leave. At the time of the hearing, he was continuing to collect leave pay from the Fire Department.

the fire department, stating that he was not able to work because he suffered from post-traumatic stress disorder (PTSD). Capt. Burkett declined the request to return to work. Thus, the department placed him on "365" leave pursuant to La. R.S. 33:1995.[2]

After two telephone sessions, Dr. Macgregor diagnosed work-induced PTSD and major depressive disorder. Capt. Burkett applied for workers' compensation benefits, which the Department denied. Capt. Burkett argues that La. R.S. 33:2581.2 permits a firefighter who has been diagnosed with PTSD to collect workers' compensation benefits. He therefore filed a disputed claim for compensation in December 2021.

The matter was tried in November 2023. Dr. Macgregor's deposition testimony was introduced as evidence at the hearing. Dr. Macgregor testified that all of his sessions with Capt. Burkett were over the phone, and he had never met Capt. Burkett in person until the day of Dr. Macgregor's deposition. Their first telephone session was a self-referral for PTSD. Dr. Macgregor diagnosed Capt. Burkett with PTSD and major depressive disorder, noting that he was exposed to many psychologically traumatizing events in his work as a fireman. According to Dr. Macgregor, Capt. Burkett had nightmares about the traumas, panic-provoking flashbacks, startle reactions, phobic avoidance of the sites where the incidents occurred, hypervigilance about being traumatized again, and trance-like episodes of "zoning out." According to Dr. Macgregor, all of these are classic symptoms of PTSD. Dr. Macgregor admitted, however, that he gets extra information about a patient from a face-to-face visit, because a patient will often give off subtle behavioral cues in person.

---

[2] La. R.S. 33:1995 provides: "Every fireman in the employ of a municipality, parish or fire protection district to which this Sub-part applies, shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks."

The Jefferson Parish Fire Department retained Dr. Rennie Culver, a psychiatrist, to provide a second medical opinion (SMO), akin to an independent medical examination (IME), on Capt. Burkett. Dr. Culver explained that he does not review any informational materials on the patient before he evaluates an SMO case. When questioned, Dr. Culver agreed that Capt. Burkett began his leave in April 2020 for the protection of his children, not because he was experiencing PTSD symptoms. Dr. Culver also stated that PTSD "inevitably involves avoidance of that which reminds you of a traumatic event," yet he noted that Capt. Burkett continued serving as vice-president of the Firefighters' Association and as chairman of the Jefferson Parish Fire Civil Service Board, meaning that he did not completely sever his ties with the fire department.[3] Dr. Culver stated that if he had PTSD, Capt. Burkett would not want to have anything to do with the fire department. Dr. Culver does not believe that Capt. Burkett suffers either from PTSD or from major depression.

Dr. Culver further agreed that watching a patient's reaction when recounting certain traumatic events is very important, as it is necessary to observe the patient's demeanor and emotional response. Dr. Culver does not believe that a voice on the telephone is the same as a patient's physical presence.

During the three-hour evaluation, Dr. Culver determined that Capt. Burkett showed no hesitation and recounted his traumatic experiences in a matter-of-fact manner, without anxiety or agitation. According to Dr. Culver, "[h]e did not appear to be disassociated emotionally from what he was recounting." During his mental status exam, his mood was normal, he was not confused or disoriented, and both

---

[3] Capt. Burkett testified that the Civil Service Board meetings usually occurred once a month and would last anywhere from one-and-a-half hours to six or eight hours, depending on the agenda. The meetings were primarily administrative hearings. During COVID, the meetings were held via Zoom conferences. The Fire Fighters' Union, of which he is vice president, also meets approximately once a month, but during COVID he believes the Union did not meet for at least a year.

his remote and recent memory were intact. His affect was appropriate and there was no evidence of psychosis or any indication that he was out of touch with reality. Dr. Culver determined that Capt. Burkett had "no mental illness" and that there was nothing to prevent him from returning to full-duty work as a firefighter. On cross-examination, however, Dr. Culver agreed that after someone has stopped working, he may have more time to dwell on past traumatic events.

Pursuant to an order from the workers' compensation court judge, Dr. Janet Johnson also performed an IME, which included a basic psychiatric evaluation and a mental status exam. She evaluated Capt. Burkett for nearly two hours. She believes Capt. Burkett was having adjustment disorder, with depressive and anxious features, because he had experienced a major change to his routine and was worried about his children and COVID. He also had certain sleep-related problems. However, Dr. Johnson stated that Capt. Burkett was able to relay past traumatic events in a very matter-of-fact way, with no change in affect, and without objective signs of anxiety or distress. Dr. Johnson believed Capt. Burkett did not meet the "full criteria" for PTSD, which has a "complex constellation of symptoms." While she agreed that a lot of the symptoms of PTSD are very subjective, she felt that Dr. Macgregor could not have made a valid diagnosis via telephone. Dr. Johnson also believed that returning to work "would be therapeutic and beneficial and would hasten his recovery."

After the trial, the Office of Workers' Compensation District judge denied Capt. Burkett's claim for workers' compensation, finding the testimony of the IME psychiatrist to be credible. The judge found that Capt. Burkett did not have a valid PTSD diagnosis. Alternatively, the judge determined that the employer had met its burden of rebutting the statutory presumption that Capt. Burkett's PTSD was causally related to his employment as a firefighter. Capt. Burkett now seeks review of that ruling.

*Analysis*

Appellate review is governed by the manifest error or clearly wrong standard of review in workers' compensation cases. *Villatoro v. Deep South BH & R Enterprises, LLC*, 16-307 (La. App. 5 Cir. 12/7/16), 206 So.3d 428, 434, *writ denied*, 17-0036 (La. 2/10/17), 216 So.3d 45. We reverse a workers' compensation judge's factual determinations only if we find from the record that a reasonable factual basis for the judge's finding does not exist, or the finding is clearly erroneous. *Id.*

Capt. Burkett assigns five errors on appeal. First, he argues that workers' compensation coverage essentially is mandatory, therefore the trial court erred in holding that his PTSD diagnosis was subject to being litigated under La. R.S. 33:2581.2. La. R.S. 33:2581.2 C states:

> Except as provided in Subsection E of this Section:
>
> (1) Any emergency medical services personnel, any employee of a police department, any fire employee, or any volunteer fireman who is diagnosed by a psychiatrist or psychologist with posttraumatic stress injury, either during employment in the classified service in the state of Louisiana pursuant to this Chapter or thereafter, shall be presumed, prima facie, to have a disease or infirmity connected with his employment.
>
> (2) Once diagnosed with posttraumatic stress injury as provided for in Paragraph (1) of this Subsection, the employee affected or his survivors shall be entitled to all rights and benefits as granted by state law to one suffering an occupational disease and who is entitled as service connected in the line of duty, regardless of whether the employee is employed at the time of diagnosis.

We disagree with Capt. Burkett's contention that the matter should not be litigated because coverage is unable to be rebutted under the language of the statute.

The statute at issue, La. R.S. 33:2581.2, entitled "Posttraumatic stress injury; presumption of compensability," is among the specifically created class of statutes addressing certain service-related occupational injuries that full-time fire

department employees and other first responders may develop during their careers. Also contained in Title 33, Chapter 5, Part IV of the Louisiana Revised Statutes are provisions that address firefighters' service-related development of heart and lung disease (La. R.S. 33:2581) and hearing loss (La. R.S. 33:2581.1). Like the statutes covering heart or lung disease and hearing loss, La. R.S. 33:2581.2 C(1) creates a "presumption" that a full-time fire department employee's posttraumatic stress injury that is diagnosed during or after his service is presumed to be connected with his employment.

A claimant for workers' compensation benefits under La. R.S. 33:2581.2 is not relieved from the burden of proof of establishing the existence of posttraumatic stress injury. Once the claimant makes a prima facie showing of the existence of posttraumatic stress injury, the presumption found in La. R.S. 33:2581.2 C(1) relieves the claimant of the initial burden of proving causation between the infirmity and his employment, thereby placing the initial burden of proof on the employer to show a lack of causation or connection to the claimant's employment. *See Bacon v. Jefferson Par. Fire Dep't,* 22-510 (La. App. 5 Cir. 12/19/22), 356 So.3d 1128, 1137, *writ denie*d, 23-0070 (La. 3/28/23), 358 So.3d 507.

Hence, in our view, the statute fully contemplates the possibility that the presumption may be rebutted. To attempt to rebut the presumption that an infirmity is connected to the claimant's employment is to litigate the issue. We find Capt. Burkett's first assignment of error lacks merit.

Second, Capt. Burkett contends that even if the matter can be litigated, the trial court erred in holding that the presumption of causation was rebutted, because the employer put on little evidence in support. Again, we disagree. The workers' compensation judge reviewed the record evidence, which included the depositions and reports of three physicians: Dr. Macgregor, the treating psychiatrist; Dr. Culver, a psychiatrist whom the Department hired to provide a second medical

opinion; and Dr. Johnson, the psychiatrist appointed by the workers' compensation judge to conduct an independent examination.

Drs. Culver and Johnson disagreed with Dr. Macgregor's diagnosis of PTSD. Dr. Culver found that Capt. Burkett suffered no mental illness at all. Dr. Johnson found that Capt. Burkett suffered from adjustment disorder, accompanied by some anxiety and depression, but she determined that his symptoms did not meet the "full criteria" for PTSD, which has a "complex constellation of symptoms." Furthermore, although Dr. Johnson agreed that PTSD symptoms are very subjective, she did not believe Dr. Macgregor could have made a valid diagnosis after two telephone visits.

Dr. Culver evaluated Capt. Burkett in a face-to-face session for more than three hours; Dr. Johnson evaluated Capt. Burkett face-to-face for almost two hours. At trial the parties agreed, without objection, to offer, file, and introduce Dr. Culver's and Dr. Johnson's reports and deposition testimony into the record. Their testimony that Capt. Burkett did not suffer from PTSD at all rebuts the presumption that Capt. Burkett suffered from work-related or work-induced PTSD under La. R.S. 33:2581.2. The second assignment of error lacks merit.

Third, Capt. Burkett argues the trial court erred in finding that his PTSD diagnosis was not valid, as there is nothing in the reports or depositions of Drs. Culver and Johnson to suggest that Dr. MacGregor's diagnosis of PTSD is invalid. Capt. Burkett contends that under the statute, the validity of the diagnosis is governed by the Diagnostic and Statistical Manual (DSM), not by subjective conclusions. Furthermore, he argues the trial court erred in concluding that the presumption had been rebutted by relying on the facts that Dr. MacGregor diagnosed PTSD after only two telephone visits, and that Capt. Burkett allegedly sought treatment for PTSD only after being instructed to return to work from his COVID leave.

In response, the Department points to the testimony and reports of Dr. Culver and Dr. Johnson, discussed above, and further notes that since taking COVID leave in April 2020, Capt. Burkett has continued in his roles on the Board of the Fire Fighters' Civil Service, as vice president of the Firefighters' Association, and in managing his personal investment properties that include 11 houses and several vacant lots. In the months before Capt. Burkett's first telephone visit with Dr. Macgregor, he communicated with the fire chief and the safety officer about returning to work, but the first time Capt. Burkett communicated his suspected PTSD diagnosis to his employer was July 22, 2021, the same day as his first visit with Dr. Macgregor, and only two days after the letter from the Department that, for the first time, ordered him to return to work.

Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Winborne v. Sanderson Farms*, 06-2272 (La. App. 1 Cir. 9/14/07), 971 So.2d 342, 345. Even when an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. *Id. See also Williams v. Rowe-Treaudo*, 11-46 (La. App. 5 Cir. 9/27/11), 75 So.3d 502, 507. The workers' compensation judge was in the best position to evaluate the testimony of Capt. Burkett and the evidence in the record. We cannot say the judge manifestly erred in choosing to believe the testimony of Dr. Culver and Dr. Johnson over the testimony of Dr. Macgregor.

Fourth, Capt. Burkett argues the trial court erred in sustaining the employer's objection to admitting into evidence the emails by which he sought treatment for his PTSD. Capt. Burkett argues that the proffered evidence shows that he was seeking psychiatric treatment for his PTSD as early as March 2021— months before he was asked to return to work. The hearing transcript reveals that

counsel for Capt. Burkett attempted to offer these emails into evidence during re-direct examination. Counsel for the Department objected, because the Department received the emails only that morning, because the emails were not offered during counsel's direct examination of Capt. Burkett, and because cross-examination did not open the door for this evidence to be introduced.

A workers' compensation judge is given wide discretion in ruling on the admissibility of evidence, and those determinations will not be disturbed absent a clear showing of abuse of that discretion that has prejudiced substantial rights. *Liggio v. Popeye's Diversified Foods & Seasoning*, 12-587 (La. App. 5 Cir. 3/27/13), 113 So.3d 392, 396. Although we recognize that the rules of evidence are less strict in a workers' compensation setting, we find no abuse of the judge's discretion that has prejudiced Capt. Burkett's substantial rights. Capt. Burkett's own testimony at trial established the timeline during which he began seeking help for his alleged PTSD. Moreover, this issue was not solely determinative of the outcome of this case. We find no merit to the fourth assignment of error.

Fifth, Capt. Burkett argues that if this Court were to reverse, and if it decides to address his compensation and medical benefits on appeal, he should be awarded supplemental earning benefits (SEBs) at a zero-earning capacity, until such time as earning capacity is established. Because we find no error in the lower court's ruling, this assignment of error is moot.

DECREE

For the foregoing reasons, the ruling denying Capt. Burkett's claim for workers' compensation benefits is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JANUARY 29, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-335**

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
WILLIAM R. MUSTIAN, III (APPELLANT)          MICHAEL F. NOLAN, JR. (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED